LOUP CITY PUBLIC SCHOOLS, SCHOOL DISTRICT NO. 1 OF SHERMAN COUNTY, APPELLANT, V. NEBRASKA DEPARTMENT OF REVENUE AND STATE TAX COMMISSIONER, M. BERRI BALKA, APPELLEES.

562 N.W.2d 551

Filed May 2, 1997.   No. S-95-655.

388

John M. Boehm and Mark L. Eurek, P.C., for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.
Loup City Public Schools, School District No. 1 of Sherman County (district), appeals the order of the Lancaster County District Court affirming the determination by the Nebraska Department of Revenue (department) of the adjusted valuation for agricultural land in Sherman County and certification of that value to the State Department of Education for use in determining state aid distributions. Because the department had not promulgated rules and regulations to guide the valuation process as required by Neb. Rev. Stat. § 79-3809 (Reissue 1994) (now amended and codified at Neb. Rev. Stat. § 79-1016 (Reissue 1996)), we conclude that the adjusted valuations determined and certified by the department for the district were not adopted in conformity with law. Accordingly, we reverse the order of the district court and remand the cause with directions.

## FACTUAL BACKGROUND
In 1990, the Legislature enacted 1990 Neb. Laws, L.B. 1059, commonly referred to as the "Tax Equity and Educational

Opportunities Support Act." In part, the act required the department to calculate the adjusted valuation of each class of property in each county for purposes of determining state aid distribution to Nebraska school districts. Neb. Rev. Stat. § 79-3809 (Cum. Supp. 1990). The purpose of the adjustment mechanism was "to place all schools on an even playing field for purposes of equalization aid, so that no school or school children would be 'unfairly benefitted or penalized by assessment practices which are inconsistent across county lines.' " Bill Summary, L.B. 1290, Committee on Education, 93d Leg., 2d Sess. (Feb. 8, 1994).

In 1991, implementation of the valuation adjustment was delayed until March 1, 1994. Neb. Rev. Stat. § 79-3809 (Supp. 1991). In 1994, the Legislature enacted 1994 Neb. Laws, L.B. 1290, which amended § 79-3809 and required the department to "compute and certify to the State Department of Education the adjusted valuation of each district for each class of property in each such district . . . ." Neb. Rev. Stat. § 79-3809 (Reissue 1994). The adjusted valuation of each class of property was to reflect as nearly as possible the state aid value; for agricultural land, the state aid value was 80 percent of market value. *Id.* For 1994, the Department of Education was to carry out this process on or before July 1. *Id.* Section 79-3809 was also amended to require that the adjusted valuation be accomplished pursuant to "assessment practices established by rule and regulation adopted and promulgated by the Department of Revenue." *Id.* L.B. 1290, amending § 79-3809, was signed by the Governor on April 19, 1994, and became effective on April 20.

Pursuant to the mandate in § 79-3809, the department calculated adjusted valuations for each school district prior to July 1, 1994. These valuations were sent to each school district along with a cover letter, an "Explanation of Process" which outlined the steps taken to determine the adjusted valuations, and a flow chart graphically depicting these steps. The adjusted valuations calculated by the department included an assessment/sales valuation ratio for agricultural land in Sherman County of 50.96 percent.

On July 27, 1994, the district filed written objection to the adjusted valuations and requested a hearing. In a letter to the department dated August 1, 1994, the district requested, in part,

a copy of the rules and regulations used in determining the adjusted valuations and a copy of the rules and regulations related to the format of the hearing. No rules and regulations had been promulgated by the department, and thus, no rules were furnished to the district. A hearing was held before a hearing officer of the Tax Commissioner on August 10.

Dennis Donner, the administrator of the property tax division for the department, testified as to the processes utilized by the department in computing the adjusted valuations. For agricultural land, the department computed the ratio of assessed value to sale price for 1993 by reviewing sales submitted by the county assessors. The base for the prior year was obtained from the 1993 certificate of taxes levied as submitted by each district. The valuation ratio was applied to the base to establish the 80-percent level of value. Finally, the value of reported growth for new property within the district not accounted for in the prior year's certificate was added. Countywide sales information was used because with few exceptions (in which case district information was used), countywide information was the best information available. The department assumed that there was equalization within each county.

The district's experts, Norman L. Anders, a registered real estate appraiser, and Carolyn J. Sekutera, the Sherman County assessor, testified by separate affidavits. Each objected to the four 1993 sales relied on by the department and suggested a number of additional sales that ought to have been included. Each objected to the aggregate assessment/sales ratio calculated by the department because the sales used were 90 percent grassland, while grassland made up only 35 percent of the county's agricultural land and was undervalued relative to the other subclasses of agricultural land. Anders estimated that grassland was assessed at approximately 60 to 65 percent of its selling price, dryland at 65 to 75 percent, and irrigated land at 70 to 85 percent. Sekutera estimated that the ratio for grassland should be 60 to 70 percent, the ratio for dryland should be 65 to 75 percent, and the ratio for irrigated land should be 80 percent.

Sekutera also objected to the department's assessment/sales ratio because the sales utilized by the department spanned only a single year—i.e., 1993 sales. It was Sekutera's opinion that

the valuation process of utilizing only 1 year's sales unfairly skewed the assessment/sales ratio, particularly in a year like 1993 when Sherman County had a limited number of dryland and irrigated land sales and a large number of grassland sales.

The department conceded that it was possible that there was not equalization in agricultural land valuation within Sherman County and requested additional time at the hearing to submit further analysis utilizing a prior year's agricultural sales. On August 16, 1994, the department submitted a letter with further analysis utilizing 1992 agricultural sales. The department analyzed 12 agricultural land sales from 1992: 6 that were predominantly grassland, 5 that were predominantly irrigated land, and 1 that was dryland. The department adjusted each group of sales to 1993 values. This analysis resulted in an assessment/sales ratio of 48.93 percent. The district claimed to have made the same calculations as the department, but it came up with a substantially different assessment/sales ratio: 64.2 percent for the 1992 sales and 60.8 percent for the combined sales for 1992 and 1993.

The Tax Commissioner found that the department used the most current and reliable information available as well as direct information from the county assessors and that the utilization and application of countywide arm's-length sales transactions, by class of real property, to the assessed valuation of that property was an accurate indicator of the level of assessment for that class of property. The Tax Commissioner concluded that the presumption that the department has faithfully performed its duties in making tax assessments will not be overcome by a mere difference of opinion as to the adjusted valuation of the district or as to the methodology used to calculate such adjusted valuations. Accordingly, the Tax Commissioner affirmed the adjusted valuations as originally determined by the department.

The district appealed to the Lancaster County District Court. Finding that the district's evidence constituted a mere difference of opinion from that of the department, the district court concluded that the adjusted values adopted by the department were supported by the evidence and were adopted pursuant to law and affirmed the order of the Tax Commissioner. This appeal followed.

## SCOPE OF REVIEW

A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Kolesnick v. Omaha Pub. Sch. Dist.*, 251 Neb. 575, 558 N.W.2d 807 (1997); *Val-Pak of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Metropolitan Utilities Dist. v. Balka, ante* p. 172, 560 N.W.2d 795 (1997).

## ASSIGNMENTS OF ERROR

Summarized and restated, the district asserts that the district court erred in (1) determining that the adjusted values were adopted pursuant to law when the department had failed to adopt rules and regulations to govern the valuation process and (2) determining that the adjusted values adopted by the department were properly determined and supported by evidence in the record.

## ANALYSIS

The district asserts that the adjusted values were not adopted pursuant to law because the department had failed to adopt rules and regulations to govern the valuation process as required by § 79-3809. The statute provides in relevant part: "Establishment of the adjusted valuation shall be based on assessment practices established by rule and regulation adopted and promulgated by the Department of Revenue." § 79-3809(1). The district contends that such rules and regulations were necessary to set forth the procedures to be used by the department in developing the adjusted valuations. At the time of the hearing on August 10, 1994, the department had not adopted rules and regulations pursuant to § 79-3809.

The department points out that § 79-3809 was not amended to require rules and regulations until April 20, 1994, and that it required the department to certify adjusted valuations to the Department of Education by July 1. The department contends that the Legislature was aware of the time involved in promulgating rules and regulations and must not have intended to require the department to complete this process prior to performing its duties in May and June 1994. The department contends that it would have been absurd to expect it to promulgate rules and regulations in such a short time period.

We must determine whether the department was required to adopt rules and regulations prior to the time of the hearing on August 10, 1994, and, if so, whether the agency decision rendered in the absence of such adopted and promulgated rules and regulations conformed to the law.

We recognize that the timeframes established by the Legislature in which the department was required to both adopt rules and regulations and complete the process of valuation were very difficult, if not impossible, to meet and placed the department and school districts in a precarious position. However, in construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997).

As a general rule, in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion. *State ex rel. Shepherd v. Neb. Equal. Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). Thus, notwithstanding the limited amount of time the department was given to carry out its responsibilities, the plain language of the statute required the department to adopt and promulgate rules and regulations to regulate the valuation process.

In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *In re Interest of Rondell B.*, 249

Neb. 928, 546 N.W.2d 801 (1996). The Legislature clearly required the department to adopt and promulgate rules and regulations in order to carry out the procedural details of L.B. 1290 and to establish objective and uniform standards by which the adjusted valuation is to be determined. This court will not ignore the Legislature's plain mandate or render it meaningless.

We have held that where a statute requires the adoption and promulgation of rules and regulations, the Administrative Procedure Act provides consequences for failure to adopt such rules and regulations. See, *Abbott v. Department of Motor Vehicles*, 246 Neb. 685, 522 N.W.2d 421 (1994); *Gausman v. Department of Motor Vehicles*, 246 Neb. 677, 522 N.W.2d 417 (1994). In *Abbott* and *Gausman*, the Department of Motor Vehicle's rules and regulations governing practice and procedure with regard to administrative license revocations had not been filed with the Secretary of State on the date of the arrests or on the date of the hearings. We held that Neb. Rev. Stat. § 84-906 (Reissue 1987) provided the consequences for failing to adopt rules and regulations: " 'No rule or regulation of any agency shall be valid as against any person until five days after such rule or regulation has been filed with the Secretary of State.' " *Gausman*, 246 Neb. at 683, 522 N.W.2d at 420. We found that the department proceeded against the defendants using rules and regulations that it had failed to file with the Secretary of State. Accordingly, we held that the defendants' due process rights were violated even though they were provided with a detailed outline of how administrative license revocation operated and were given an opportunity to defend against the charges at a revocation hearing.

In the instant case, the district, as a creature and political subdivision of the state, is neither a natural nor an artificial "person" and, therefore, cannot invoke due process protection against the state. See *Rock Cty. v. Spire*, 235 Neb. 434, 455 N.W.2d 763 (1990). Nevertheless, the district contends that it did not have notice of what standards, i.e., assessment practices, the department would utilize for purposes of establishing the adjusted valuation prior to the time of the hearing. The district claims that this is not a case where the operative statute sets forth specific standards, i.e., assessment practices, or detailed

procedures for conducting the adjusted valuation process for purposes of school aid distribution. Thus, the district asserts that the lack of established standards to be used by the department in developing the required adjusted valuations substantially impaired the ability of school districts to meaningfully participate in the hearing process. We agree.

Even though the department had constructed procedures and apparently established standards for the calculation of the adjusted valuations for the school districts in the state, the department had not adopted these rules or regulations pursuant to the rulemaking procedures set forth in the Administrative Procedure Act (see Neb. Rev. Stat. § 84-901 et seq. (Reissue 1994)), nor had the department filed any rules or regulations governing the adjusted valuation process with the Secretary of State pursuant to § 84-902. Thus, the department had no valid rules or regulations governing the calculation of the adjusted valuations in effect at the time of the hearing.

The types of problems that result from a lack of established standards and procedures are exemplified by the evidence in the instant case. At the August 10, 1994, hearing, the department conceded that it was possible that there was not equalization in agricultural land valuation within Sherman County, and 6 days after the hearing, the department submitted an additional analysis utilizing a prior year's agricultural sales. When analyzing the same agricultural land sales for 1992, the department's analysis resulted in an aggregate assessment/sales ratio of 48.93 percent while the district's analysis resulted in an assessment/sales ratio of 64.2 percent utilizing the same sales.

Because the department had not adopted and promulgated rules and regulations that would govern the process by which property would be valued in each school district, the district could not know with finality what rules the department had followed, nor could the district know with what rules it was required to conform. It naturally follows that a reviewing court is not able to make a determination whether an agency decision "conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable" when there are no valid rules or regulations governing the administrative proceeding. Administrative proceedings under such circum-

stances are, by definition, arbitrary and capricious, and do not comport with the law. We hold that the department's adjusted valuation determination did not conform to the law when its failure to adopt and promulgate statutorily mandated rules and regulations resulted in a procedure that substantially impaired the district's ability to meaningfully participate in the hearing process.

As a result, we conclude that the adjusted valuations determined and certified by the department for the district were not adopted in conformity with law. In light of this holding, we need not and do not consider the district's second assignment of error.

## CONCLUSION

Accordingly, we reverse the order of the district court and remand this cause to the district court with directions to reverse the determination of the Tax Commissioner with directions to the Tax Commissioner to conduct further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.