571 N.W.2d 53 (1997)
253 Neb. 423
Angelo VINCI, Appellee and Cross-Appellant,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES and the State of Nebraska, Appellants and Cross-Appellees.
No. S-96-107.
Supreme Court of Nebraska.
December 5, 1997.
*56 Don Stenberg, Attorney General, and Lynne R. Fritz, Lincoln, for appellants and cross-appellees.
Lynnette Z. Boyle, of Tietjen, Simon & Boyle, Omaha, for appellee and cross-appellant.
WHITE, C.J., and CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
CONNOLLY, Justice.
At issue in this case is whether the Nebraska Department of Correctional Services (Department), acting as an employer, can discipline an employee for using a racial epithet to refer to a superior officer without offending the 1st and 14th Amendments to the U.S. Constitution. We conclude that such remarks, as used in the form and context in the instant case, are not a matter of public concern and therefore are not protected by the 1st and 14th Amendments. We reverse in part, and remand with directions.

BACKGROUND
Lt. Angelo Vinci, a 13-year employee of the Department, was employed at the Lincoln Correctional Center (LCC). On February 8, 1994, he was demoted to the rank of correctional officer, his pay was reduced to the minimum level for that position, and he was transferred within the Department. This action was taken by the director of the Department, Harold W. Clarke, at the recommendation of the warden of the LCC. According to the findings of the Department's disciplinary committee, which were adopted by the director, Vinci was demoted for violating three Department rules under administrative regulation No. 112.6, Employee Discipline: (1) C-V001Failure to Obey Orders, Rules or Regulations; (2) C-V004Insubordinate Acts; and (3) C-V006Conduct Inappropriate for a State Employee. He was also found to have violated administrative regulation No. 112.7, Policies Against Workplace Harassment. The disciplinary committee's findings were based upon certain comments Vinci had allegedly made about other employees and the actions of management.
These comments were first brought to the attention of the Department by Sgt. Kevin Edelmaier, who worked directly under Vinci. On November 3, 1993, Edelmaier submitted a statement to the administration of the LCC alleging that Vinci had been using racially and sexually offensive language to describe other Department employees and that Vinci had made other comments critical of the administration. According to Edelmaier, between October 13 and November 3, 1993, Vinci referred to Capt. Alvin Moore, an African-American who was one of Vinci's superior officers, as "an ignorant mother fucker" and a "nigger." Edelmaier stated that Vinci *57 referred to Deputy Warden Howard Ferguson, also an African-American and superior to Moore, as a "stupid nigger" or a "psycho nigger" or just as a "psycho." Vinci also allegedly referred to a female employee, Shirley Afsharkah, as a "black cunt," "nigger cunt," and "bitch" on several occasions. In addition, Vinci allegedly criticized that "stupid fucking Ferguson" for not locking down the facility after a prisoner named "Goodenow" was killed.
An investigation was ordered as a result of Edelmaier's report, which investigation was headed by an outside officer, Mona Rhynalds, superintendent of the Hastings Correctional Center. Rhynalds interviewed Vinci, Edelmaier, and other employees whom Edelmaier reported as having heard Vinci use racially and sexually derogatory terms. At the conclusion of her investigation, Rhynalds stated: "While no definitive verifications of Sergeant Edelmaier's allegations were revealed during this investigation, I believe sufficient grounds have been established to continue this investigation." Rhynalds further recommended that polygraphs be administered to key individuals, which apparently was done.
At the conclusion of the investigation, Vinci received a written notice of charges setting forth the factual allegations against him and the rules of conduct he had violated. A disciplinary hearing was held before Warden Robert P. Houston and a disciplinary committee, with Vinci represented by counsel. During the hearing, Vinci admitted telling subordinates that Moore was "an ignorant fucker" and that this was inappropriate behavior, but he denied calling Moore a "nigger." Edelmaier testified concerning the statements he had put in his previous report. Another individual, Cpl. Robert Laycock, testified that he had heard Vinci refer to either Moore or Ferguson as a "nigger" either at Vinci's home or in the parking lot. As a result of the hearing, the disciplinary committee found that Vinci had violated the rules as set forth above and recommended his demotion, which recommendation was adopted by the director.

VINCI'S ADMISSIONS
Vinci appealed the disciplinary committee's decision to the Nebraska State Personnel Board (Board). At the hearing before the Board's hearing officer, Vinci admitted referring to Ferguson as a "psycho jerk" in conversations with Edelmaier at the LCC. He also admitted referring to Ferguson as a "nigger" during a conversation with Laycock at Vinci's home, but denied having done so at his workplace. Vinci was Laycock's supervisor at the time Vinci used the word "nigger" in reference to Ferguson, and Ferguson was Vinci's superior officer. Vinci further admitted that two prior disciplinary actions had been taken against him, even though both actions had been removed from his personnel file prior to the hearings in this case. The first disciplinary action was in 1987 and was imposed for leaving the institution during a shift without authorization. Vinci was again punished in 1990, although the record is unclear as to why he was disciplined. Finally, as stated previously, Vinci admitted calling Moore an "ignorant fucker" at the Department's disciplinary hearing. A record of that hearing was received into evidence at the Board's hearing as exhibit 6.
Edelmaier testified at this hearing as well, reiterating his prior statements concerning Vinci's behavior. Clarke testified at the hearing, stating that his decision to demote Vinci was based on all the evidence presented to him, including Vinci's prior disciplinary actions. Clarke believed the discipline was necessary because Vinci's behavior created a situation at the LCC which was not conducive to achieving the objectives of management.

FINDINGS OF PERSONNEL BOARD
As a result of this hearing, the Board adopted the decision of the hearing officer, which affirmed the findings of the Department's disciplinary committee. Specifically, the Board found:
1. That ... the Appellant made the following comments about various Department of Correctional Services employees:
a. In regard to Howard Ferguson, Deputy Warden at LCC, "psycho", "psycho nigger", and "psycho fucking nigger";
b. In regard to Shirley Afsharkah "stupid bitch", "black cunt" and "nigger cunt"; and *58 c. In regard to Captain Alvin Moore "stupid nigger" and "ignorant mother fucker";
2. That Sergeant Edelmaier was not intimidated by the statements of the Appellant, but the Appellant's statements did cause disruption in the workplace.
3. In a conversation at his home, with Corporal Robert Laycock, the Appellant did make reference to Deputy Warden Ferguson as a "nigger".
4. Following the Goodenow incident the Appellant made inappropriate remarks as to how agency management had handled the situation.
The Board concluded that Vinci's statements constituted violations of three Department rules: (1) CV001Failure to Obey Orders, Rules or Regulations; (2) C-V004Insubordinate Acts; and (3) C-V006Conduct Inappropriate for a State Employee. Accordingly, the Board affirmed the decision of the Department's disciplinary committee and denied Vinci's appeal.

FINDINGS OF DISTRICT COURT
Vinci appealed the Board's decision to the Lancaster County District Court under Nebraska's Administrative Procedure Act, Neb.Rev.Stat. § 84-901 et seq. (Reissue 1994). On appeal, the district court reviewed the record de novo and found that the Board's decision was not supported by competent evidence, specifically finding that Edelmaier's testimony, upon which the Board's findings rested, lacked credibility. The district court did, however, affirm the Board's findings that Vinci referred to Ferguson as a "nigger" in a conversation with Laycock at Vinci's home and as a "psycho jerk" to subordinates in the workplace, both facts which Vinci admitted. The district court further concluded that Vinci's use of the word "nigger" was protected under the First Amendment, leaving only his use of the phrase "psycho jerk" as punishable by the Department. The district court found Vinci's use of that phrase to be a violation of Department rule C-V006Conduct Inappropriate for a State Employee. Accordingly, the district court ordered that Vinci be reinstated to his former rank and remanded the cause for a determination of discipline, noting that the Department has imposed punishment for similar behavior in the range of up to 6 months' probation.

ASSIGNMENTS OF ERROR
The Department asserts that the district court erred in (1) reversing the decision of the Board and remanding the case for a determination of discipline in accordance with its findings; (2) finding that the Department did not meet its burden of proving that its decision to discipline Vinci was made in good faith and for cause; (3) finding that the First Amendment to the U.S. Constitution precludes the Department from imposing discipline for Vinci's admitted statement to a subordinate officer, Laycock, while in Vinci's home that their superior officer, Ferguson, was a "nigger"; (4) finding that evidence regarding numerous racially and sexually derogatory statements by Vinci was insufficient to meet the requisite burden of proving cause for discipline; (5) finding that it was improper for the Department to consider certain previously imposed discipline in determining the degree of discipline to be imposed in this case; and (6) finding that the discipline imposed was not appropriate for the nature and severity of the violations. Vinci cross-appeals, asserting that the district court erred in finding that his reference to Ferguson as a "psycho jerk" violated rule C-V006Conduct Inappropriate for a State Employee.

STANDARD OF REVIEW
An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. Keys v. Department of Motor Vehicles, 249 Neb. 964, 546 N.W.2d 819 (1996). See § 84-918.
A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Piska v. Nebraska Dept. of Soc. Servs., 252 Neb. 589, 567 N.W.2d 544 (1997); Loup City Public Schools v. Nebraska Dept. of Rev., 252 Neb. 387, 562 N.W.2d 551 (1997).
*59 When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Piska v. Nebraska Dept. of Social Services, supra; Loup City Public Schools v. Nebraska Dept. of Rev., supra.
Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. Kramer v. Kramer, 252 Neb. 526, 567 N.W.2d 100 (1997).
On an appeal under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. Spencer v. Omaha Pub. Sch. Dist., 252 Neb. 750, 566 N.W.2d 757 (1997); IBP, Inc. v. Sands, 252 Neb. 573, 563 N.W.2d 353 (1997).
In a de novo review by a district court of the decision of an administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings. Rainbolt v. State, 250 Neb. 567, 550 N.W.2d 341 (1996).

ANALYSIS

FIRST AMENDMENT
The district court concluded that Vinci's admitted use of the word "nigger" in reference to Ferguson was protected by the First Amendment, and thus not subject to discipline by the Department. The Department contends that the use of the word "nigger" was not a matter of public concern and, therefore, not protected by the First Amendment, such that imposing discipline for its use was appropriate.
The U.S. Supreme Court has clearly addressed the relationship between government employees and the First Amendment, holding that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). However, "the State's interests as an employer in regulating the speech of its employees `differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" Id. at 140, 103 S.Ct. at 1686, quoting Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). According to Connick, the threshold question in determining whether the First Amendment applies to a government employee's statement is whether it constitutes speech on a matter of public concern. See, also, Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), rehearing denied 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819; Sinn v. City of Seward, 3 Neb.App. 59, 523 N.W.2d 39 (1994). If the statement at issue is a matter of public concern, we must balance the employee's interest in making the statement against "`the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Rankin v. McPherson, 483 U.S. at 388, 107 S.Ct. at 2899, quoting Pickering v. Board of Education, supra. See, also, Connick v. Myers, supra. However, if the statement does not involve a matter of public concern, then the First Amendment does not apply, and our inquiry is at an end. See, Connick v. Myers, supra; Rankin v. McPherson, supra; Terrell v. University of Texas System Police, 792 F.2d 1360 (5th Cir.1986), cert. denied 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); Sinn v. City of Seward, supra.
"The public concern test functions both to prevent every employee grievance from becoming a constitutional case, Connick, 461 U.S. at 149, 103 S.Ct. at 1691, and to protect a public employee's right as a citizen to speak on issues of concern to the community." Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir.1995). Whether an employee's statement is a matter of public concern is determined by its content, form, and context, as revealed by the entire record. Rankin *60 v. McPherson, supra. Furthermore, whether a statement was made at the workplace or at home is of no consequence to our public concern analysis. See, e.g., Connick v. Myers, supra; Shahar v. Bowers, 114 F.3d 1097 (11th Cir.1997); Tindle v. Caudell, supra; Swank v. Smart, 898 F.2d 1247 (7th Cir.1990), cert. denied 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113; McMullen v. Carson, 754 F.2d 936 (11th Cir.1985); Lawrenz v. James, 852 F.Supp. 986 (M.D.Fla.1994), aff'd without opinion 46 F.3d 70 (1995); Hawkins v. Department of Public Safety and Correctional Services, 325 Md. 621, 602 A.2d 712 (1992). Cf. Flanagan v. Munger, 890 F.2d 1557 (10th Cir.1989).
Vinci contends that his use of the word "nigger" is protected because it "slipped out" while he was discussing Ferguson's alleged assault of another correctional officer and the discriminatory administration of polygraphs at work. However, "[a]n employee who makes an unprotected statement is not immunized from discipline by the fact that this statement is surrounded by protected statements." Waters v. Churchill, 511 U.S. 661, 681, 114 S.Ct. 1878, 1891, 128 L.Ed.2d 686 (1994) (plurality opinion) (holding that government employer's decisions must be those of reasonable manager). See, also, Morris v. Crow, 117 F.3d 449 (11th Cir.1997) (indicating that waving political sign while engaging in vituperative outburst does not necessarily give outburst First Amendment protection). The public concern test is applied to the speech for which Vinci was actually demoted. See id. Vinci was not demoted for his discussion of the alleged assault and the polygraphs. Rather, Vinci was demoted, in part, because the director found that Vinci referred to Ferguson as a "nigger." Therefore, we will limit our public concern analysis to Vinci's use of the word "nigger" in the form and context in which it was used.
The district court conceded that "the actual words Vinci spoke certainly cannot be said to be valuable to the public at large." Nonetheless, the district court, relying on Waters v. Chaffin, 684 F.2d 833 (11th Cir.1982), concluded that Vinci's statement deserved First Amendment protection. In Waters, an offduty police officer was having drinks with a coworker when he referred to his chief as a "son-of-a-bitch" and a "bastard." The court held that the statements were constitutionally protected under the First Amendment. We note, however, that Waters was decided prior to Connick and that Waters applied the U.S. Supreme Court's test from Mt. Healthy City School Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), not Connick's public concern test. Like the district court in this case, the court in Waters admitted that "[t]he public has little interest in an individual's uncouth deprecations of his superior, so the public's right of access to information (citation omitted) is not implicated...." 684 F.2d at 838 n. 11. Thus, to the extent that Waters v. Chaffin, supra, indicates the speech in this case is constitutionally protected, it is no longer persuasive precedent.
An important factor in our content, form, and context analysis is whether the government employee intended to disseminate his statement's content to the public. See, Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Terrell v. University of Texas System Police, supra; Lawrenz v. James, supra. The employee's motivation in making the statement is another relevant factor in determining whether a statement is of public concern. Morris v. Crow, supra. See, Tindle v. Caudell, supra; Lawrenz v. James, supra. Vinci's own admission that the statement was made at home to a coworker and was muttered "under my breath" indicates that he did not intend to disseminate his statement's content to the public. Likewise, Vinci's own admission that the statement "slipped out" indicates that his motivation was something other than adding to public dialog. Clearly, Vinci's use of the word "nigger" in reference to Ferguson during a discussion regarding employment matters could only have been motivated by private concern. See, Hawkins v. Department of Public Safety and Correctional Services, 325 Md. 621, 602 A.2d 712 (1992) (holding that government employee's use of racially charged language to describe bank teller is not matter of public concern); Allen v. Lewis-Clark State College, 105 Idaho *61 447, 459, 670 P.2d 854, 866 (1983) (stating that employee's "racial views or experiences [are] clearly not matters of legitimate public concern upon which open debate is vital to informed decisionmaking by the public").
The content, form, and context of Vinci's speech indicate that he was not attempting to stimulate public dialog on a matter of public concern. Thus, we conclude that Vinci was not demoted for speaking as a citizen on matters of public concern, but, rather, for referring to his supervisor using an inflammatory and offensive slur. See Clarke v. Board of Education, 215 Neb. 250, 338 N.W.2d 272 (1983). Accordingly, the district court's determination that the First Amendment precluded the Department from imposing discipline for Vinci's use of the word "nigger" does not conform to the law.
While it is true that Vinci's statement was made in his own home, it was made to a subordinate coworker. Had Vinci made the statement to someone who was not connected with the Department, such as a close family member, our First Amendment analysis would remain unchanged, but Vinci would not be subject to discipline. The Department's rules would not apply in that situation, since a statement made to someone not connected with the Department would not affect either Vinci's or the Department's performance.

PRIOR DISCIPLINARY VIOLATIONS
The Department asserts that the district court erred in refusing to consider Vinci's past disciplinary violations. The district court found "it was improper to consider disciplinary material that previously had been removed from Vinci's personnel file in determining the degree of discipline to be imposed." Clarke testified at the Board hearing that he relied on previous incidents already removed from Vinci's personnel record as an additional factor in reaching his decision to discipline Vinci. We agree with the district court that Clarke's reliance on Vinci's past disciplinary violations was improper.
The interpretation of statutes and regulations presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. Southeast Rural Volunteer Fire Dept. v. Neb. Dept. of Revenue, 251 Neb. 852, 560 N.W.2d 436 (1997); Inner Harbour Hospitals v. State, 251 Neb. 793, 559 N.W.2d 487 (1997). Further, in the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to ascertain the meaning of words in a rule or regulation which is plain, direct, and unambiguous. Dittrich v. Nebraska Dept. of Correctional Services, 248 Neb. 818, 539 N.W.2d 432 (1995).
The State of Nebraska's personnel rules and regulations provide in part: "At the request of the employee, records of disciplinary action shall be removed from the employee's personnel file after two years after the discipline was imposed." 273 Neb. Admin. Code, ch. 11, § 004.03 (1993). Clarke testified that even though a document may be removed from an employee's file such that it is not available for other agencies or future employers, he has the right, as an administrator, to maintain information as to the performance of individual employees.
Clarke's interpretation of the rule regarding the maintenance of personnel records is inconsistent with the rule's plain meaning. The rule clearly provides that records may be removed, but says nothing about the consideration of such records after removal. If the Department wants to consider records that have been removed from an employee's file in accordance with its own regulation, the Department should explicitly provide for such action. Therefore, the district court's decision was correct regarding Vinci's past disciplinary violations.

FINDINGS OF FACT
The Department argues that the district court erred in finding that the Department did not meet its burden of proving that its disciplinary decision was made in good faith and for cause, and in finding that the evidence regarding Vinci's statements was insufficient to meet the requisite burden of *62 proving cause for discipline. Apparently, the Department is arguing that the findings of the district court were not supported by competent evidence. Specifically, the Department argues that the district court erred in finding that Edelmaier's testimony lacked credibility, asserting that this finding did not give weight to the fact that the hearing officer heard and observed the witnesses.
It is true that a district court, in applying a de novo standard of review, can consider and may give weight to the fact that the hearing officer observed the witnesses and accepted one version of the facts rather than another. Law Offices of Ronald J. Palagi v. Dolan, 251 Neb. 457, 558 N.W.2d 303 (1997). This proposition of law does not, however, "constitute a directive to courts which make de novo reviews that the courts must give deference to the agency as fact finder." (Emphasis supplied.) Id. at 461, 558 N.W.2d at 306. Thus, the district court did not err simply because its findings contradicted those of the Board.
Furthermore, on an appeal under the Administrative Procedure Act, we review the judgment of the district court for errors appearing on the record and will not substitute our factual findings for those of the district court where competent evidence supports those findings. Spencer v. Omaha Pub. Sch. Dist., 252 Neb. 750, 566 N.W.2d 757 (1997). For purposes of reviewing an order of an administrative agency, competent evidence means evidence which tends to establish the fact in issue. In re Application of Jantzen, 245 Neb. 81, 511 N.W.2d 504 (1994). The district court's order set forth its findings concerning Edelmaier's lack of credibility as follows:
None of his testimony was corroborated even though Edelmaier contended that others were present when the purported improper statements were made. If Vinci indeed did engage in inappropriate behavior in an open and notorious manner as alleged by Edelmaier, it is inconceivable that no one else heard or saw that inappropriate conduct. This court finds it implausible that all of the people named by Edelmaier as being able to corroborate his version of Vinci's actions, were engaged in a conspiracy, or were so intimidated that they would deny having seen or heard the acts reported by Edelmaier. Those alleged witnesses to these events denied having witnessed such conduct and testified that they did not believe Vinci would engage in such conduct. It also is significant that Edelmaier's complaints in regard to Vinci arose shortly after the contentious matter with respect to the duty schedule. The unsubstantiated uncorroborated testimony of Edelmaier is insufficient to meet the requisite burden of proof.
Our review of the record confirms the district court's finding that Edelmaier's testimony was uncorroborated by any witnesses, other than Laycock's testimony that Vinci used the word "nigger" either at home or in the parking lot. There was also some evidence indicating that Edelmaier's statements were motivated by a disagreement between him and Vinci concerning Edelmaier's duty schedule. Together, these facts tend to establish that Edelmaier's testimony was not credible. Thus, we cannot conclude that the findings of the district court in regard to Edelmaier's lack of credibility were not supported by competent evidence.
Nevertheless, the district court did err in finding that Vinci did not refer to Moore as an "ignorant mother fucker." Vinci admitted calling Moore an "ignorant fucker" while testifying at the Department's disciplinary hearing, a record of which was introduced into evidence as exhibit 6. In a de novo review on the record of an agency, the record consists of the transcripts and bill of exceptions of the proceedings before the agency and facts capable of being judicially noticed pursuant to Neb. Evid. R. 201. Slack Nursing Home v. Department of Social Services, 247 Neb. 452, 528 N.W.2d 285 (1995). The bill of exceptions consists of all evidence offered at trial, including exhibits. See Neb. Ct. R. of Prac. 5A(1) and 5B(6) (rev.1996). Thus, the "record" reviewed by the district court included exhibit 6, the record of the Department's disciplinary hearing. Although Vinci did not admit to using the adjectival "mother" while testifying at the Department's hearing, any distinction between the two statements is irrelevant in *63 the context of a disciplinary hearing. We conclude that the district court's finding that Vinci did not refer to Moore as an "ignorant mother fucker" is not supported by competent evidence.

DEGREE OF DISCIPLINE IMPOSED
Finally, the Department argues that Vinci's use of the word "nigger," when combined with Vinci's use of the phrase "psycho jerk," establishes good faith and cause for the degree of discipline imposed. Although the Board's authority is to determine whether an agency's decision was made in good faith and for cause, this matter comes to us on appeal from the district court. Unlike the district court, which may review the degree of discipline imposed by an agency de novo, we review the district court's decision in that regard only for errors appearing on the record.
In the instant case, the district court's determination that the discipline imposed by the director was excessive was based solely on Vinci's statement that Ferguson was a "psycho jerk." The district court did not consider Vinci's use of the word "nigger" or the phrase "ignorant mother fucker" in making its determination that Vinci's demotion was unwarranted. Because we have already determined that the district court erred by not considering Vinci's use of those statements in reaching its decision, we conclude that the district court's order reinstating Vinci to his previous rank does not conform to the law and remand the cause for further consideration.

CROSS-APPEAL
On cross-appeal, Vinci asserts that the trial court erred in finding that Vinci's reference to Ferguson as a "psycho jerk" violated rule C-V006Conduct Inappropriate for a State Employee. That rule states:
Any employee subject to this regulation who violates the following shall be punished as the agency may direct:
a. makes statements or comments that cause disruption in the work place,
b. fails to maintain satisfactory working relationships with the public, other employees or the inmate population,
c. is derelict in the performance of his/her duties.
d. displaying actions/making statements or comments that are considered offensive to an individual or group based on race, ethnic origin, sex, religion, age, gender or disability.
e. fails to make reasonable provision for payment of personal debts, which results in more than one garnishment,
f. commits acts on or off the job which adversely affects the employee's performance and/or the Department's performance or function.
Vinci argues that the phrase "psycho jerk" does not violate the above regulation because there was no "just cause" to discipline him for "talking trash" at work and the statement was not discriminatory in nature, as required by subpart d. The Department counters, arguing that Vinci's use of the phrase "psycho jerk" violates the rule because it was made to a subordinate coworker, which adversely affects the Department's performance. Further, even assuming that Vinci's interpretation of rule C-V006 is correct, the Department argues that Vinci's use of the phrase "psycho jerk" violates rule C-V004Insubordinate Acts.
Although the Board concluded that Vinci's statements constituted violations of three Department rules, C-V001, C-V004, and C-V006, the district court addressed only rule C-V006 in its order. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. Hanigan v. Trumble, 252 Neb. 376, 562 N.W.2d 526 (1997). In its de novo review of the Board's decision, the district court did not make any findings concerning rules C-V001 and C-V004. Thus, even were we to assume that Vinci's interpretation of rule C-V006 is correct, a matter we need not decide, Vinci's use of the phrase "psycho jerk" may have violated rule C-V001 or C-V004, which would still subject Vinci to discipline for that statement. Because the trial court's findings are incomplete, we remand the cause for further consideration.

*64 CONCLUSION
The judgment of the district court is affirmed in part and in part reversed, and the cause is remanded with directions to affirm, reverse, or modify the Department's decision, taking into consideration whether Vinci's statements violate the Department's rules, and, if so, whether the level of discipline imposed was appropriate.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.