748 N.W.2d 42 (2008)
275 Neb. 594
The GOODYEAR TIRE & RUBBER COMPANY, Appellant,
v.
STATE of Nebraska et al., Appellees.
No. S-06-1103.
Supreme Court of Nebraska.
May 2, 2008.
*44 John M. Boehm, of Butler, Gaiter, O'Brien & Boehm, Lincoln, and Quentin (Doug) Sigel, of Scott, Douglass & McConnico, L.L.P., Austin, TX, for appellant.
Jon Bruning, Attorney General, and L. Jay Bartel, Lincoln, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The Goodyear Tire & Rubber Company (Goodyear) appeals from the district court's order affirming the decision by the Nebraska State Tax Commissioner (the Commissioner) to deny a portion of Goodyear's claim for a tax refund under the Employment and Investment Growth Act,[1] commonly referred to as "L.B. 775."[2] Goodyear sought a refund for components used to repair or replace parts of equipment utilized in the project covered by the L.B. 775 agreement entered into between Goodyear and the Nebraska Department of Revenue (the Department). The Commissioner's order states that the "parties have stipulated that the sole issue to be decided is `whether the transactions listed on exhibits 9 and 10 are for the purchase of qualified property pursuant to Neb.Rev. Stat. § 77-4105(3)(a)(i) (Reissue 2003).'" Pursuant to the stipulation, both the Commissioner and the district court reviewed this sole issue. The district court, in its de novo review, concurred with the Commissioner's interpretation of the term "qualified property." The court found that the "parts used to repair equipment after such equipment was placed in service at the project are not `qualified property' as defined in Section 77-4103(13)." The district court also determined that the Commissioner was not required to adopt and promulgate rules or regulations with regard to the Commissioner's interpretation of L.B. 775.

BACKGROUND
The facts of this case are not in dispute. The only dispute is the interpretation to be placed on the term "qualified property." On December 1, 1995, Goodyear submitted *45 an application to the Department seeking incentives under L.B. 775 for its manufacturing plants in Nebraska. The application was approved by the Commissioner who, on behalf of the State of Nebraska, entered into an "Employment and Investment Growth Act Project Agreement" with Goodyear. This agreement provided that if Goodyear met required levels of investment by the time specified, Goodyear would be entitled to various incentives.
In September 2000, Goodyear and the Commissioner, on behalf of the State, entered into an amended "Employment and Investment Growth Act Project Amended Agreement" (the Amended Agreement), which replaced the earlier agreement. The Amended Agreement also provided that if Goodyear met the required levels of investment, Goodyear would be entitled to various incentives. Among those incentives was a refund of the following:
(i) The sales or use tax paid by Goodyear on tangible property used as a part of the project and "placed in service" on and after December 1, 1995. For purposes of this Amended Agreement, "placed in service" means the day the qualified property is eligible for depreciation, amortization, or other recovery under the Internal Revenue Code of the United States....
(ii) The sales or use tax paid by Goodyear on any property, other than motor vehicles, based in this state and used in this and other states in connection with the project.
On August 25, 2005, Goodyear filed with the Department a claim for refund, pursuant to L.B. 775 for sales or use taxes paid in July 2002, in the amount of $44,601.34. On September 26, 2005, Goodyear filed a claim for refund, pursuant to L.B. 775 for sales and use taxes paid in August 2002, in the amount of $41,722.99. These claims were consolidated for purposes of an administrative hearing. The items listed in the claims are indexed by area of use and are characterized by Goodyear as "components." Prior to the administrative hearing, the parties stipulated that the "components" are repair or replacement parts used to repair or replace parts of property, otherwise referred to as "equipment" used in the project covered by the Amended Agreement. Paragraph 19 of the stipulation states:
The transactions referenced on Exhibit[s] 9 and 10 that are identified by "component" or "components" on the "reason" field are the purchase of items of tangible property. These components are repair or replacement parts used to repair or replace parts of property used in the project that [Goodyear] depreciated [hereafter Equipment]. The items, and how and where they were used, are more specifically described on Exhibit 10. The above referenced items of Equipment were placed in service before and after the date of application, December 1, 1995. The parties further stipulate that all of the Equipment was placed in service before the above referenced components were added to the Equipment. The parties do not stipulate or identify which components were to repair or replace parts of Equipment placed in service before or after the date of application.
On February 14, 2006, the Commissioner entered an order denying Goodyear's claim with regard to items characterized by Goodyear as "components" because they are not "qualified property" under L.B. 775. The Commissioner stated that under § 77-4103(13),
[r]efunds of tax are allowed only for "components" of tangible personal property of a type subject to depreciation that will be located and used at the project. Clearly, the words "will be" *46 demonstrate that not only must the equipment upon which the component will be placed needs to be depreciable, but it also must be newly located and used at the project. Therefore, whether a "component" is "qualified" depends on the status of the equipment that is being modified or repaired. Here, the parties have stipulated that all of the various equipment for which the repair parts were purchased was placed in service both prior to and subsequent to Goodyear's application for a LB 775 agreement in December of 1995.
(Emphasis in original.)
The Commissioner noted that Goodyear's interpretation of § 77-4103(13) "would require that the newly purchased items be used at the project and used to replace or modify equipment that is subject to depreciation, regardless of when that equipment was originally acquired." The Commissioner concluded that Goodyear's reasoning defeats the stated purpose of L.B. 775, which is to encourage new investment and employment in Nebraska.
The Commissioner also addressed a contention by Goodyear that because the Department does not have any rules or regulations regarding the construction of § 77-4103(13), the Department should be prohibited from applying that statute in this case. The Commissioner stated that § 77-4111 gives the Commissioner discretion to decide if the adoption and promulgation of rules and regulations for carrying out the purposes of L.B. 775 is necessary. The Commissioner concluded that the lack of a specific regulation interpreting § 77-4103(13) did not deprive Goodyear of a meaningful opportunity to participate in the hearing on its claim.
In accordance with the Administrative Procedure Act (APA), Goodyear appealed to the district court the Commissioner's denial of Goodyear's refund request for repair and replacement parts characterized by Goodyear as "components." Goodyear alleged that the cumulative amount the Commissioner erred in failing to refund is $14,310.10. On appeal, Goodyear asserted that the Commissioner's reasoning that the equipment upon which the components are placed must be newly located and used at the project site misreads and is in conflict with the language of § 77-4103(13). Goodyear further asserted that the Commissioner's failure to adopt and promulgate rules or regulations adopting the Commissioner's interpretation of L.B. 775 in the Commissioner's order bars the Department from applying it to Goodyear and deprives Goodyear of a meaningful opportunity to participate in a hearing on Goodyear's claim. The matter was submitted to the district court on stipulated facts.
The district court affirmed the Commissioner's decision, concluding that parts used to repair equipment after such equipment was placed in service at the project are not "qualified property" as it is defined in § 77-4103(13). The court further concluded that the Commissioner's failure to promulgate rules and regulations defining "qualified property" does not prohibit the construction adopted by the Commissioner. Goodyear now appeals.

ASSIGNMENTS OF ERROR
Goodyear asserts, restated, that the district court erred in (1) concluding that components used to repair or replace parts of property used in a project covered by an L.B. 775 agreement are not qualified property, (2) ruling that Goodyear's interpretation of L.B. 775 is inconsistent with the purpose and intent of L.B. 775, and (3) concluding that the Commissioner's decision should not be set aside because of the Department's failure to adopt and promulgate *47 rules regarding the Department's interpretation.

STANDARD OF REVIEW
A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[3] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]
The meaning of a statute is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

ANALYSIS

QUALIFIED PROPERTY
In their first two assignments of error, Goodyear argues that the district court erred in affirming the Commissioner's finding that the repair and replacement parts for which Goodyear seeks a refund are not qualified property. Goodyear argues that the definition of qualified property has been misconstrued by the Commissioner and the district court. Goodyear argues that the Commissioner and the district court wrongly interpreted qualified property as including components only where the components are placed on equipment newly located at the project covered under the L.B. 775 agreement.
In the absence of ambiguity, courts must give effect to the statutes as they are written. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[6] With regard to tax exemption provisions, we have stated that tax exemption provisions are strictly construed, and their operation will not be extended by construction. Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation.[7] Because statutes conferring an exemption from taxation are strictly construed, the party claiming an exemption from taxation must establish entitlement to the exemption.[8]
Section 77-4105(3)(i) provides that when the required level of investment is reached under the L.B. 775 agreement, the taxpayer is entitled to a refund of all sales and use taxes paid for qualified property used as part of the project. Qualified property is defined under § 77-4103(13) as "any tangible property of a type subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986, or the components of such property, that will be located and used at the project."
We have stated that the word "or" when used properly, is disjunctive.[9] Qualified *48 property, therefore, includes two types of property: (1) any tangible property subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986 or (2) components of such property. The question left for us to decide is what the phrase "of such property" entails.
The last portion of the first sentence of § 77-4103(13) states that tangible property is property that "will be located and used at the project." As we read the statute, this phrase limits the property that is qualified under the statute. Thus, tangible property that is subject to depreciation, amortization, or other recovery under the Internal Revenue Code of 1986 is not qualified unless it will be used and located at the project. Because "of such property" refers to tangible property that is otherwise covered under the statute, components are not qualified unless the components are part of tangible property that will be used and located at the project.
The term "component" encompasses a wide variety of tangible property used in business and industry, from a light bulb to a diesel engine. Following the principle that tax exemptions are to be strictly construed, we read § 77-4103(13) to require that a component itself be "of a type subject to depreciation, amortization, or other recovery under the Internal Revenue Code" in order to constitute "qualified property." This is consistent with the Employment and Investment Growth Act's stated policy of encouraging new business investment in Nebraska.[10] The record does not reflect that any of the repair and replacement "components" for which Goodyear claims sales and use tax refunds were themselves depreciable or subject to amortization or other recovery. Most appear to be items which would normally be treated as expenses. For this reason, we conclude that the refund claim was properly denied. We express no opinion as to whether a depreciable component incorporated into tangible property which preexisted an L.B. 775 project but is located and used at such project would constitute "qualified property" within the meaning of § 77-4103(13), as that issue is not presented in the facts of this case.

FAILURE TO ADOPT AND PROMULGATE RULES REGARDING THE DEPARTMENT'S INTERPRETATION
In its final assignment of error, Goodyear argues that the district court erred when it concluded that the Commissioner's decision should not be set aside because of the Department's failure to adopt and promulgate rules regarding the Department's interpretation of "qualified property." Section 77-4111 provides that the Commissioner "shall adopt and promulgate all rules and regulations necessary to carry out the purposes of the Employment and Investment Growth Act."
In Loup City Pub. Sch. v. Nebraska Dept. of Rev.,[11] we addressed the question of whether the Department was required to promulgate rules and regulations under Neb.Rev.Stat. § 79-3809 (Reissue 1994). We concluded that the Department was required to do so. That statute, which has since been amended and recodified, provided in relevant part: "`Establishment of the adjusted valuation shall be based on assessment practices established by rule and regulation adopted and promulgated by the Department of Revenue.'"[12] We *49 noted in that case that "shall," as a general rule, is considered mandatory and inconsistent with the idea of discretion. Thus, under the plain language of that statute, the Department was required to adopt and promulgate rules and regulations to regulate the valuation process. Because the Department had not adopted and promulgated rules and regulations governing the valuation process, we concluded that the adjusted valuations of the Department were not in conformity with the law.
In the present case, § 77-4111 requires the Commissioner to adopt and promulgate those rules and regulations, but only those rules that are necessary for carrying out the purposes of L.B. 775. The purpose of L.B. 775 is to "accomplish economic revitalization of Nebraska" and to "encourage new businesses to relocate to Nebraska, retain existing businesses and aid in their expansion, promote the creation and retention of new jobs in Nebraska, and attract and retain investment capital in the State of Nebraska."[13] We conclude that promulgating rules and regulations regarding interpretation of qualified property is not necessary for carrying out those purposes. We, therefore, determine that this assignment of error is without merit.

CONCLUSION
For the reasons discussed above, we affirm the decision of the district court.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. §§ 77-4101 to 77-4113 (Reissue 2003).
[2] See 1987 Neb. Laws, L.B. 775 (effective May 28, 1987).
[3] Farmland Foods v. State, 273 Neb. 262, 729 N.W.2d 73 (2007).
[4] Id.
[5] Reimers-Hild v. State, 274 Neb. 438, 741 N.W.2d 155 (2007).
[6] Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., 273 Neb. 133, 728 N.W.2d 560 (2007).
[7] Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue, 248 Neb. 518, 537 N.W.2d 312 (1995).
[8] See id.
[9] Pfizer v. Lancaster Cty. Bd. of Equal., 260 Neb. 265, 616 N.W.2d 326 (2000).
[10] See § 77-4102(2).
[11] Loup City Pub. Sch. v. Nebraska Dept. of Rev., 252 Neb. 387, 562 N.W.2d 551 (1997).
[12] Id. at 392, 562 N.W.2d at 555.
[13] § 77-4102.