FARMLAND FOODS, INC., AND THE MEMBERS OF THE UNITARY GROUP, APPELLANTS, v. STATE OF NEBRASKA ET AL., APPELLEES.

729 N.W.2d 73

Filed March 23, 2007.    No. S-05-1148.

Steven D. Davidson, of Baird Holm, L.L.P., for appellants.

Jon Bruning, Attorney General, and L. Jay Bartel for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.
## NATURE OF CASE
Farmland Foods, Inc., and the Members of the Unitary Group (collectively Farmland) appeal from the district court's order affirming a decision by the State Tax Commissioner (the Commissioner) to deny a portion of Farmland's claim for a credit refund under the Employment and Investment Growth Act,[1] commonly referred to as "L.B. 775." The project agreement between Farmland and the Department of Revenue (the Department) specified that Farmland could claim its credits only against purchases or leases made after the start of the taxable year following the year in which Farmland first met the minimum levels of employment and investment required to qualify for L.B. 775 incentives. The primary issue in this appeal is whether that limitation is contrary to Farmland's rights under the plain language of L.B. 775. The other issue in this appeal is whether, in an administrative appeal, a district court can affirm on grounds other than those of the administrative agency.

---

[1] Neb. Rev. Stat. §§ 77-4101 to 77-4112 (Reissue 1996 & Cum. Supp. 2000).

### BACKGROUND

On May 24, 2000, Farmland submitted an application to the Department seeking incentives under L.B. 775 for the planned expansion of Farmland's production facility in Crete, Nebraska. The application stated that Farmland would invest at least $10 million in qualified personal property as described by L.B. 775 and would be hiring at least 100 full-time equivalent employees. The Commissioner approved the application and, on behalf of the State of Nebraska, entered into an "Employment and Investment Growth Act Project Agreement" with Farmland (the Agreement). The Agreement provided that if Farmland met the required levels of employment and investment by the time specified, Farmland would be entitled to various incentives.

The description of the incentives in the Agreement generally mirrored the language of L.B. 775. But with regard to incentive credits used to obtain a refund of sales and use taxes on purchases and leases for use at the project that are not otherwise directly refundable under L.B. 775, the Agreement, in paragraph 5(b), added that "[t]he purchase or lease must have been made after the start of the taxable year following the year in which the required minimum levels of employment and investment were first met . . . ."

The Commissioner, on behalf of the Department, acknowledged that Farmland had met all the required targets for the project in the tax year ending August 31, 2001. On May 4, 2004, Farmland filed a claim for a "credit refund" of taxes paid between September 1, 2000, and October 31, 2003.

In a letter dated January 28, 2005, the Commissioner approved $1,033,378.90 of the request, but denied the remainder. The Commissioner denied $327,082.99 in taxes paid prior to April 1, 2001, on the basis that the refund was barred by the statute of limitations from the general tax code.[2] The Commissioner then determined that sums paid in taxes from April 1 to September 1, 2001, a total of $211,489.32, were "not eligible for a credit refund under the project applied for." After quoting paragraph 5(b) of the Agreement, the Commissioner stated, "The use of credits for a project which qualifies as of the tax year ending August 31, 2001

---

[2] Neb. Rev. Stat. § 77-2708 (Reissue 1996).

is limited to sales and use tax paid on purchases made on or after September 1, 2001."

Farmland appealed the Commissioner's partial denial of its requested credit refund to the district court in accordance with the Administrative Procedure Act (APA). On appeal, the Department admitted that the Commissioner failed to apply a more specific limitations period for refund claims under L.B. 775[3] and thus was incorrect in determining that any portion of the requested refund was time barred. However, the Department asserted that the decision should nonetheless be affirmed because the reason stated by the Commissioner for denying the $211,489.32 amount applied equally to the $327,082.99 amount. Both amounts reflected expenditures made before the start of the taxable year following the year in which the required minimum levels of employment and investment were first met.

The district court affirmed the Commissioner's decision, concluding that L.B. 775 did not authorize carrying back of credits to periods before the credits were earned and established. Although the Commissioner was incorrect on the statute of limitations issue, the court explained that a proper result would not be reversed merely because it was reached for the wrong reason. Moreover, the court explained, "[t]he plaintiffs should not have been surprised or unaware of the secondary rationale applied to the denial of the $327,032.99, as the same reasoning was used for the initial denial of $211,489.32." Farmland appealed the district court's decision to the Nebraska Court of Appeals, and we moved the case to our docket on our own motion.[4]

## ASSIGNMENTS OF ERROR

Farmland asserts that the district court erred in (1) affirming the decision of the Commissioner to partially deny Farmland's refund claim, (2) affirming the decision of the Commissioner for a reason different than the reason articulated by the Commissioner, and (3) finding that L.B. 775 credits may not be used to obtain a refund of sales and use tax paid on purchases made before minimum investments levels were first met by the taxpayer.

---

[3] See § 77-4106(d).

[4] See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[5] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[6]

## ANALYSIS

One of the incentives under L.B. 775 is credits, computed in accordance with § 77-4105(4), which can be used "to obtain a refund of sales and use taxes . . . which are not otherwise refundable that are paid on purchases, including rentals, for use at the project."[7] It is clear that under both L.B. 775 and the Agreement, credits are earned only during years that the required levels are met and that no refund claims may be filed until after meeting the required levels.[8] The issue in this case concerns what the credits may be used for once they are earned and are redeemable. The Department argues that the credits can be used only to obtain a refund of project-related purchases that were made after the required levels were met. Farmland, in contrast, argues that the credits may be redeemed for project-related purchases made both before and after reaching required levels.

Farmland admits that the Agreement it signed with the Commissioner unambiguously stated that credits were only to be used for refunds of project-related purchases made after the required levels were met. Specifically, the Agreement stated that the purchase or lease "must have been made after the start of the taxable year following the year in which the required minimum levels of employment and investment were first met."

Farmland argues, however, that this limitation in the Agreement is contrary to Farmland's rights under the plain language of L.B.

---

[5] *Tyson Fresh Meats v. State*, 270 Neb. 535, 704 N.W.2d 788 (2005).

[6] *Id.*

[7] § 77-4106(1)(a).

[8] See §§ 77-4105(4) and 77-4106(2)(a).

775. Farmland points out that the Agreement explicitly states that L.B. 775 controls over the language of the Agreement as follows:

> The parties intend that Farmland shall be entitled to all the incentives for which Farmland qualifies as set forth in the [Employment and Investment Growth] Act. To the extent that the language contained in this Agreement is incomplete or inconsistent with the Act, the language of the Act shall control and is hereby incorporated herein by this reference.

Also, § 77-4104(4) states that the Commissioner "shall . . . agree to allow the taxpayer to use the incentives contained in the Employment and Investment Growth Act."

Farmland's argument that the plain language of L.B. 775 provides for credit refunds of both pre- and post-required-level purchases rests entirely on the fact that § 77-4106(1)(a) places no stated limitation on the purchases to be refunded other than that they not otherwise be refundable and that they be "for use at the project." Thus, Farmland argues:

> There is no time limitation or restriction in the statute. Its plain language permits use of the credits to obtain a refund of sales and use taxes paid on purchases "for use at the project," whether those purchases were made before or after the year in which minimum investment levels were first attained.[9]

Farmland is incorrect in stating that there is no time limitation or restriction in the statute. Section 77-4106(1)(c) states, "The credit may be carried over until fully utilized, except that such credit may not be carried over more than eight years after the end of the entitlement period." It would be incongruous to read the phrase in § 77-4106(1)(a), "for use at the project," as a positive expression that there is no limitation on when the purchases for use at the project were made, when another subsection of the same statutory provision explicitly discusses time limitations. Instead, it is clear that subsection (1)(a) sets forth the type of purchases which can be refunded, while subsection (1)(c) sets forth the period of time for which such purchases can be refunded. And subsection (1)(c) does not provide for the carrying back of

---

[9] Brief for appellants at 19.

credits to obtain a refund of purchases made prior to obtaining required levels.

The most that can be said is that L.B. 775 is silent on the subject of whether credits can be used for refunds of purchases made prior to reaching required levels. Nothing in the language of L.B. 775 contradicts the provision in the Agreement between Farmland and the Department that the credit refund is limited to purchases "made after the start of the taxable year following the year in which the required minimum levels of employment and investment were first met." Accordingly, we find no merit to Farmland's first and third assignments of error.

Farmland next argues that even if we find that L.B. 775 does not contradict the language in the Agreement regarding credit refunds, we can affirm only the Commissioner's denial of $211,489.32 in credit refunds. Farmland asserts that we must reverse the Commissioner's denial of the $327,082.99 amount despite the fact that it also represents purchases made prior to reaching the required levels. To affirm the denial of $327,082.99, according to Farmland, would violate the "cardinal principle of administrative law" that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based, and no others."[10] The Commissioner articulated only the statute of limitations as a reason for denying the $327,082.99, and there is no dispute that the statute of limitations does not bar the refund.

We believe Farmland misconstrues the "cardinal principle" it invokes. The principle, as Farmland acknowledges, derives from *Securities Comm'n v. Chenery Corp.*[11] In *Chenery Corp.*, the U.S. Supreme Court reviewed an order by the Securities and Exchange Commission approving a reorganization plan which prevented certain officers and directors who had acquired preferred stock from participating on equal footing with other stockholders. The commission had reasoned that judge-made rules of equity mandated its decision, but the U.S. Supreme Court found that

---

[10] *Id.* at 14.

[11] *Securities Comm'n v. Chenery Corp.*, 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943).

the judicial precedents upon which the commission relied were inapplicable. The Court then rejected the idea that it should affirm nonetheless because the commission could have approved the plan under its statutory authority to determine whether the proposal was fair and equitable or detrimental to the interests of the public, investors, or consumers. The Court explained that the commission's "action must be measured by what the Commission did, not by what it might have done."[12]

But this broad statement was immediately qualified: "It is not for us to determine independently what is 'detrimental to the public interest or the interest of investors or consumers' or 'fair or equitable' within the meaning of [the relevant act]."[13] The Court likened the determinations of public interest and fairness which the Commission did not make to determinations of fact that only a jury could make, but which had not been made. In such circumstances, the appellate court cannot take the place of the agency just as it cannot take the place of the jury. The Court stated:

> If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.[14]

The Court emphasized that as to issues other than those of policy or judgment by the agency, "[W]e do not disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'"[15] The Court explained that "[i]t would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to

---

[12] *Id.*, 318 U.S. at 93-94.

[13] *Id.*, 318 U.S. at 94.

[14] *Id.*, 318 U.S. at 88.

[15] *Id.*

formulate."[16] Subsequent decisions from other courts have held that an appellate body is without power to affirm on a different ground only when doing so would usurp the agency's role as a finder of fact or as a maker of policy, or would otherwise intrude upon the domain entrusted to the administrative agency.[17]

We have not specifically addressed to what extent this court adopts the rule set forth in *Chenery Corp.* We have said that in the context of an appeal from an administrative agency decision under the APA, we will not consider an issue that was not presented to or passed upon by the agency.[18] The Department urges that we affirm in accordance with our frequently stated principle that no judgment will be reversed merely because the court has given a wrong reason for it.[19]

█ We need not decide whether we could affirm on grounds not decided by the agency because the decisive determination in this case was made by the agency. In denying the $211,489.32, the Commissioner relied on the language of the Agreement limiting credit refunds to purchases made after reaching required levels. There is no dispute that the $327,082.99 likewise represents purchases made before the required levels were met. No rule of law precludes this court from affirming an agency decision stating a correct reason and correct facts simply because a portion of those facts was not explicitly connected with the agency's correct reason. It would indeed be wasteful to remand this cause for the perfunctory exercise of explicitly connecting the obvious, that the $327,082.99, representing purchases

---

[16] *Id.*

[17] See, e.g., *Burlington Truck Lines v. U. S.*, 371 U.S. 156, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962); *Koyo Seiko Co., Ltd. v. U.S.*, 95 F.3d 1094 (Fed. Cir. 1996); *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996); *Frederick v. Pickett*, 392 Md. 411, 897 A.2d 228 (2006); *Thorin v Bloomfield Hills Sch*, 179 Mich. App. 1, 445 N.W.2d 448 (1989).

[18] *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). See, also, *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996).

[19] See, e.g., *In re Trust Created by Cease*, 267 Neb. 753, 677 N.W.2d 495 (2004); *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001); *McDonald v. DeCamp Legal Servs.*, 260 Neb. 729, 619 N.W.2d 583 (2000).

made before the required levels were met, also falls under the Commissioner's stated reasoning for the $211,489.32 amount.

We find no merit to Farmland's argument that the plain language of L.B. 775 contradicts the limitation of the Agreement to purchases made after reaching required levels. We affirm the Commissioner's denial of that portion of the requested refund that represented purchases made before reaching required levels.

AFFIRMED.