756 N.W.2d 280 (2008)
276 Neb. 640
BECTON, DICKINSON AND COMPANY, a New Jersey Corporation, and Becton Dickinson Infusion Therapy Systems, Inc., a Delaware Corporation, appellants,
v.
NEBRASKA DEPARTMENT OF REVENUE et al., appellees.
No. S-07-844.
Supreme Court of Nebraska.
October 10, 2008.
*282 Nicholas K. Niemann, Thomas O. Kelley, and Matthew R. Ottemann, of McGrath, North, Mullin & Kratz, P.C., L.L.O., Omaha, for appellants.
*283 Jon Bruning, Attorney General, and L. Jay Bartel, Lincoln, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
Becton, Dickinson and Company and Becton Dickinson Infusion Therapy Systems, Inc., which we shall refer to jointly as "Becton," appeal from an order of the district court for Lancaster County affirming the state Tax Commissioner's denial of a claim for a refund of sales and use taxes under Nebraska's Employment and Investment Growth Act,[1] commonly referred to as "L.B. 775."[2] The claim was denied as time barred because it was filed beyond the limitations period specified in Neb.Rev.Stat. § 77-2708(2)(b) (Reissue 2003), as extended by agreement of the parties. The primary issue in this appeal is whether the late filing can be excused on equitable grounds.

BACKGROUND
L.B. 775 grants various tax benefits to qualified businesses meeting certain new job and new investment thresholds in Nebraska. A business that creates at least 30 new jobs and invests at least $3 million within Nebraska may receive a refund of Nebraska income or sales and use taxes paid on qualified property purchased for use at the L.B. 775 project site.[3] A business that invests at least $10 million in qualified property and creates at least 100 new jobs is eligible to receive those same benefits, plus a 15-year exemption from personal property tax on certain classes of personal property.[4]
In its L.B. 775 application, Becton indicated its intent to qualify for L.B. 775 incentives based on the investment of $10 million in qualified property and the hiring of at least 100 new employees by September 30, 2006. L.B. 775 requires a party applying for incentives to enter into a written agreement with the Tax Commissioner setting forth the specific terms of the incentive plan.[5] Becton and the Tax Commissioner entered into such an agreement on February 21, 2001. The agreement stated that it was the intent of Becton to complete the project as it was described in the application, i.e., to invest $10 million and create 100 new jobs. The agreement also stated, however, that the required levels of investing were
the hiring of at least thirty (30) new employees in Nebraska and the investment in qualified property in Nebraska of at least $3,000,000 for all incentives herein, except they shall be one hundred (100) new employees and $10,000,000 of investment for the personal property tax exemption incentive. These levels must be met prior to September 30, 2006.
The agreement required Becton to provide specific documentation demonstrating that it had met the requirements of L.B. 775. The agreement stated that the Nebraska Department of Revenue (Department) would review the documentation in order to verify that Becton had met the minimum employment and investment levels. The parties generally refer to this review as the "qualification audit." The agreement also specifically provided that when the qualification audit satisfied the *284 Department that Becton had met the minimum employment and investment levels required by L.B. 775, the Department would issue a letter to Becton acknowledging its attainment of the required levels. The agreement stated that a copy of this letter "must accompany" any claim Becton made for incentives allowed under L.B. 775.
In May 2001, the Department notified Becton that it would commence the qualification audit in October. The audit began at approximately that time, and the record reflects voluminous e-mail correspondence between the parties regarding the audit process. Becton contends that it had invested over $3 million and created 30 new jobs by September 30, 2000, and that it had provided sufficient documentation to the Department to demonstrate it had met these thresholds by November 14, 2002. Becton did not request a qualification letter at that time, however, and the Department continued its audit until it had verified that Becton met the $10-million and 100-job thresholds. The Department issued a qualification letter to Becton on July 20, 2005, stating that Becton had attained the "minimum levels of $10,000,000 in investment and an increase of 100 full time equivalent employees in the tax year ended September 30, 2000 as required by [L.B. 775]."
L.B. 775 provides that "[n]o refund claims [for sales and use tax] shall be filed until after the required levels of employment and investment have been met."[6] Claims for sales and use tax refunds under L.B. 775 must be filed "within three calendar years from the end of the year the required levels of employment and investment are met or within the period set forth in section 77-2708."[7] Section 77-2708(2)(b) provides:
No refund shall be allowed unless a claim therefor is filed with the Tax Commissioner by the person who made the overpayment or his or her attorney, executor, or administrator within three years from the required filing date following the close of the period for which the overpayment was made, within six months after any determination becomes final under section 77-2709, or within six months from the date of overpayment with respect to such determinations, whichever of these three periods expires later, unless the credit relates to a period for which a waiver has been given. Failure to file a claim within the time prescribed in this subsection shall constitute a waiver of any demand against the state on account of overpayment.
Between September 18, 2001, and July 28, 2005, the Department and Becton entered into 14 written agreements to extend the limitations period for filing Becton's claims for refund of sales and use taxes under L.B. 775, utilizing a standard form furnished by the Department and signed by representatives of the Department and Becton. The final extension agreement, executed on July 28, 2005, extended the limitations period from that date until September 15, 2005. In an exchange of e-mail correspondence on August 24, 2005, Becton verified with the Department that the statute of limitations for filing its refund claims had been extended until September 15. On September 7, the Department asked if Becton would require another extension, and a representative of Becton replied that it would not.
On November 29, 2005, approximately 2½ months after the extended limitations period had expired, Becton filed 14 sales and use tax refund claims for the period of *285 October 2001 to September 2002. The total amount of the claims was $2,370,840.91. The claims were submitted on forms created and provided by the Department. None of the claims included a request for an administrative hearing.
On February 10, 2006, the Tax Commissioner summarily denied the claims because the statute of limitations for filing them had expired on September 15, 2005, the date specified in the most recent extension agreement. The Tax Commissioner did not address the substantive merits of the claims.
Pursuant to the Administrative Procedure Act (APA),[8] Becton filed a petition in the district court for Lancaster County against the Department, the Tax Commissioner, and the State of Nebraska (collectively appellees) for review of the Tax Commissioner's decision. Then, before the district court acted, Becton filed a motion requesting that it remand the case back to the Tax Commissioner for a formal administrative hearing. The district court refused to remand the action, and ultimately, it determined that the Tax Commissioner correctly found that Becton's refund claims were barred by the statute of limitations.
Becton filed this timely appeal, which we moved to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[9]

ASSIGNMENTS OF ERROR
Becton assigns, renumbered and restated, that the district court erred in (1) ruling that the statute of limitations was not tolled during the qualification audit; (2) not ruling that the Department was estopped from asserting the statute of limitations because it should have issued Becton a qualification letter within the original limitations period; (3) failing to remand the case to the Department for a formal administrative hearing; and (4) ruling that exhibit 10, the Department's instructions for filing refund claims, was not properly received into evidence.

STANDARD OF REVIEW
[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[10] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[11]

ANALYSIS

EQUITABLE TOLLING
[3] Becton contends that it could not file its refund claims until the Tax Commissioner completed the qualification audit and issued a qualification letter, that the Tax Commissioner was lax in conducting the audit and issuing the letter, and that the limitations period should therefore be deemed tolled until the issuance of the qualification letter on July 20, 2005. Becton argues that it should have 3 years from that date in which to file its claims. The district court rejected this argument, reasoning *286 that "[e]quitable tolling ... is neither consistent with the statutory scheme nor with the action of the parties in entering into agreements extending the statute of limitations for definite periods of time." Relying upon the decision of the U.S. Supreme Court in United States v. Brockamp,[12] the appellees argue that equitable tolling can never be employed to extend a statute of limitation for the filing of tax refund claims. Alternatively, the appellees argue that the district court correctly determined that the doctrine of equitable tolling could not be applied to the facts of this case.
Becton's equitable tolling argument is based upon the principle that a statute of limitations can be equitably tolled when a paramount authority prevents the claimant from filing a claim.[13] But the cases upon which it relies involve circumstances which are distinguishable from the facts of this case. For example, in Lincoln Joint Stock Land Bank v. Barnes,[14] an appeal from a mortgage foreclosure, this court rejected an argument that the claim was time barred. For approximately 9 years, the plaintiff was subject to a restraining order issued by a federal court which enjoined prosecution of the foreclosure action. This court noted the general rule that "`during [a] period of ... restraint, incident to other legal proceedings which are of such a character that the law forbids one of the parties to exercise a legal remedy against another, the running of the statute of limitations is postponed, or, if it has commenced to run, is suspended.'"[15] The opinion also noted the holding of other courts that "`[w]henever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right.'"[16] The instant case differs significantly from Lincoln Joint Stock Land Bank in that no judicial action prevented the filing of Becton's refund claim. Rather, the parties contractually agreed that no tax refund claim would be filed until the Department had completed its qualification audit and that the limitations period would be extended for a specific period of time after the audit was completed and the qualification letter was issued.
Becton also relies upon Bauers v. City of Lincoln.[17] In that case, former Lincoln firefighters filed an action against the city seeking reimbursement for amounts paid to pension funds, recovery of deductions made because of workers' compensation payments, and compensation for claims of federal civil rights violations. We held that the first two claims had to be filed with the city within 1 year of accrual pursuant to Neb.Rev.Stat. § 15-840 (Reissue 1991). Because the firefighters had missed that deadline, those claims were barred. We noted, however, that the federal civil rights claims under 42 U.S.C. § 1983 (1988) were not subject to the notice and time limitations of § 15-840. *287 Reasoning that if the city had honored the claims the federal action would not have been necessary, we held that the 4-year statute of limitations for filing the § 1983 actions was tolled during the time those claims were pending before the city pursuant to § 15-840 and that thus, the civil rights claims were timely asserted. Bauers did not involve the circumstance presented in this case where the parties agreed in writing to a specific extension of the statute of limitations as a result of protracted administrative proceedings.
Becton's reliance upon Yoder v. Nu-Enamel Corporation[18] is likewise misplaced. In that case, the plaintiffs brought a cause of action based upon fraud. The defendant removed the case to federal court and then sought to have the action dismissed because it had ceased to do business in Nebraska. Based on a controlling Nebraska Supreme Court case, the Eighth Circuit Court of Appeals dismissed the action. The plaintiffs returned to state court and succeeded in persuading this court to overrule the controlling case. The plaintiffs then refiled the fraud action in federal court. By that time, however, the statute of limitations on the claim had run. Based upon the general principles cited by this court in Lincoln Joint Stock Land Bank, the Eighth Circuit held that because the plaintiffs' ability to resort to the courts had been taken away, the statute of limitations was tolled during the time period between the dismissal of their first action and the overruling of the controlling case by the Nebraska Supreme Court.
The key factor distinguishing Yoder, Bauers, and Lincoln Joint Stock Land Bank from this case is the fact that Becton was not prevented by any paramount governmental authority from asserting its refund claim in a timely manner. To the contrary, Becton's ability to do so was specifically preserved by the parties' multiple written agreements to extend the limitations period. After the Department issued its qualification letter on July 20, 2005, Becton had until the agreed upon date of September 15, 2005, to file its claim, but it did not do so. The record even reflects that the Department inquired whether Becton would need an additional extension, and Becton replied that it would not.
These circumstances are analogous to the facts of two cases in which we have held the doctrine of equitable tolling to be inapplicable. In Brodine v. Blue Cross Blue Shield,[19] an insured was denied coverage in July 1999 for services provided during the previous months of January through May. She filed suit against her insurer in federal court in April 2002, seeking recovery under the Employee Retirement Income Security Act of 1974. That action was dismissed in November 2002. On December 22, 2003, she filed suit against the insurer in state court, alleging breach of contract. Because the insurance contract contained a 3-year statute of limitations for such claims, the insurer moved for and was granted summary judgment. On appeal, the insured argued that the statute of limitations was tolled during the pendency of her federal lawsuit, based upon equitable principles. We rejected this argument, reasoning that the state court action was not dependent upon the resolution of any issues in the federal lawsuit and that the federal court did not enjoin or restrain her from proceeding further against the insurer. We also stated: "More important, the limitations period had not run by the time the federal action was dismissed. Rather ... more than 11 *288 months remained still to run on the limitations period."[20]
Also pertinent is our decision in National Bank of Commerce v. Ham.[21] There, a borrower defaulted in 1989 on a promissory note issued by a bank. The borrower then filed for bankruptcy, and the bank was subject to an automatic stay enjoining it from commencing any lawsuit on the note. On December 28, 1994, the bankruptcy petition was dismissed and the stay lifted. On July 14, 1995, the bank sued, seeking to recover on the note. The district court found in favor of the bank. In doing so, it reasoned that the 5-year statute of limitations for suit on a contract was tolled by the 774 days during which the bank was subject to the bankruptcy stay. Reversing that determination, this court relied on a bankruptcy statute[22] which provided that if a statute of limitations ran during the time of a bankruptcy stay, the creditor had 30 days after notice of the termination of the bankruptcy to file its action. We noted that the common-law doctrine of tolling was based in equity and that there was no inequity in limiting the bank's right to file suit to 30 days after the termination of the bankruptcy stay, especially when there was no evidence that the debtor was responsible for the bank's late filing. We specifically held:
[W]e find no inequity in requiring [the bank] to commence its action within 30 days following the termination or dismissal of the bankruptcy. Unlike situations which might require an equitable tolling of the statute of limitations, such as fraudulent concealment or equitable estoppel, the creditor subject to the bankruptcy stay is, by definition, aware of its potential claim against the debtor. At the very least, the creditor can prepare to file the suit during the pendency of the stay.[23]
In this case, Becton knew and agreed that it could not file its refund claims until after receiving the qualification letter from the Department. After receipt of the letter dated July 20, 2005, Becton knew and agreed that it had until September 15 to file its claims, but it failed to do so. On these facts, the district court did not err in concluding that the doctrine of equitable tolling was inapplicable. We need not and, therefore, do not reach the appellees' contention that the doctrine could never apply to a tax refund claim.

EQUITABLE ESTOPPEL
[4] In a somewhat related equitable argument, Becton contends that by November 14, 2002, it had provided the Department with sufficient data to prove that Becton had met the $3-million and 30-job thresholds. Becton thus contends that the Department could have issued a qualification letter at that time. All of the refunds Becton seeks in this action are incentives based on the $3-million and 30-job requirements. Becton contends that if the qualification letter had issued in November 2002, then it could have timely filed its claims within the general 3-year statute of limitations set forth in § 77-4106(2)(d). Becton asserts that because the Department failed to issue the qualification letter in November 2002, the Department now should be equitably estopped from asserting the statute of limitations as a defense.
[5] Six elements must be satisfied for the doctrine of equitable estoppel to apply: (1) conduct which amounts to a false representation *289 or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel.[24]
The record simply does not support these elements. Pursuant to the terms of its agreement with the Department, Becton was aware that no qualification letter would be issued until the entire audit was complete. There is no showing of any false representation or concealment of material facts on the part of the Department or the Tax Commissioner. The record reflects that Becton was fully aware of the audit process and of the agreements to extend the limitations period. Indeed, by executing the extension agreements and verifying the final extension date in subsequent correspondence with the Department, Becton demonstrated its knowledge that the limitations period was running.
We note the appellees' argument that equitable estoppel can never be applied in tax refund cases under Brockamp.[25] Because we conclude that the elements of equitable estoppel are not established on the facts of this case, we do not reach this broader issue.

DENIAL OF MOTION TO REMAND AND REJECTION OF EXHIBIT 10
[6, 7] Becton contends that the district court erred in denying its motion to remand the case to the Department for a formal administrative hearing prior to reaching the merits. A regulation promulgated by the Department states in relevant part that
[a] claim for refund ... shall not be presumed to be a request for an oral hearing. The Tax Commissioner shall grant a taxpayer or his authorized representative an opportunity for an oral hearing if the taxpayer so requests. In this latter case, the request for an oral hearing should be made at the time of filing the claim....[26]
Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[27] Becton was therefore on notice of the regulatory requirement.
Becton acknowledges that it did not request an oral hearing when it filed its refund claims. However, it argues that its failure to do so was the result of the Department's failure to explain, in the filing instructions for a refund claim, that an oral hearing must be specifically requested. Becton further argues that the Department was required to do so by § 84-909(2), which states: "To assist interested persons dealing with it, each [state] agency shall so far as deemed practicable supplement its rules and regulations with descriptive statements of its procedures." The Department's instructions for filing refund claims are not included *290 in the record transmitted by the Department to the district court. The instructions are included in exhibit 10 offered by Becton, which the district court first received but then rejected based upon our holding in Wolgamott v. Abramson,[28] that in reviewing a final decision of an administrative agency in a contested case pursuant to the Administrative Procedure Act, a court may not take judicial notice of the adjudicative fact which was not presented to the agency, because the taking of such evidence would impermissibly expand the court's statutory scope of review de novo on the record of the agency. Becton also assigns error with respect to this ruling.
We need not decide whether the district court erred in not receiving exhibit 10 or whether § 84-909(2) required the Department to inform taxpayers of the requirement to request an administrative hearing. Becton argues that the remedy for any error would be a remand for an administrative hearing so that it could present evidence "demonstrating how the Department's mismanagement of the L.B. 775 program was the cause of the present case."[29] Such a hearing would serve no purpose. Regardless of what evidence of "mismanagement" Becton might present at an administrative hearing, it could not change three basic facts which are undisputed from the record: (1) Becton knew and agreed that it could not submit refund claims until it received a letter from the Department certifying that it had met the investment and employment thresholds of L.B. 775, (2) after Becton received the Department's letter to this effect dated July 20, 2005, it knew and agreed that the limitations period for filing its refund claims was extended to September 15, 2005, and (3) Becton did not file its refund claims until November 29, 2005. As we have noted, these straightforward facts preclude any equitable grounds for avoiding the bar of the statute of limitations. Accordingly, we conclude that the district court did not err in denying Becton's motion for remand.

CONCLUSION
For the reasons discussed, we conclude that the order of the district court affirming the decision of the Tax Commissioner conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. We affirm.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. §§ 77-4101 to 77-4112 (Reissue 2003 & Cum.Supp.2004).
[2] See 1987 Neb. Laws, L.B. 775.
[3] See §§ 77-4104 through 77-4106.
[4] See § 77-4105.
[5] § 77-4104(4).
[6] § 77-4106(2)(a).
[7] § 77-4106(2)(d).
[8] Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum.Supp.2006).
[9] See Neb.Rev.Stat. § 24-1106(3) (Reissue 1995).
[10] Goodyear Tire & Rubber Co. v. State, 275 Neb. 594, 748 N.W.2d 42 (2008); Farmland Foods v. State, 273 Neb. 262, 729 N.W.2d 73 (2007).
[11] Id.
[12] United States v. Brockamp, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).
[13] See, Yoder v. Nu-Enamel Corporation, 145 F.2d 420 (8th Cir.1944); Bauers v. City of Lincoln, 245 Neb. 632, 514 N.W.2d 625 (1994); Lincoln Joint Stock Land Bank v. Barnes, 143 Neb. 58, 8 N.W.2d 545 (1943).
[14] Lincoln Joint Stock Land Bank v. Barnes, supra note 13.
[15] Id. at 64, 8 N.W.2d at 551, quoting 34 Am.Jur. Limitation of Actions § 237 (1941).
[16] Id. at 65, 8 N.W.2d at 551, quoting St. Paul, Minneapolis & Manitoba Ry. C. v. Olson, 87 Minn. 117, 91 N.W. 294 (1902). Accord Johnson v. Johnson, 182 Okla. 293, 77 P.2d 745 (1938).
[17] Bauers v. City of Lincoln, supra note 13.
[18] Yoder v. Nu-Enamel Corporation, supra note 13.
[19] Brodine v. Blue Cross Blue Shield, 272 Neb. 713, 724 N.W.2d 321 (2006).
[20] Id. at 724, 724 N.W.2d at 329.
[21] National Bank of Commerce v. Ham, 256 Neb. 679, 592 N.W.2d 477 (1999).
[22] 11 U.S.C. § 108(c) (1994).
[23] National Bank of Commerce v. Ham, supra note 21, 256 Neb. at 691, 592 N.W.2d at 484.
[24] Capitol City Telephone v. Nebraska Dept. of Rev., 264 Neb. 515, 650 N.W.2d 467 (2002).
[25] United States v. Brockamp, supra note 12.
[26] 316 Neb. Admin. Code § 33-003.01A (1986).
[27] Robbins v. Neth, 273 Neb. 115, 728 N.W.2d 109 (2007).
[28] Wolgamott v. Abramson, 253 Neb. 350, 570 N.W.2d 818 (1997).
[29] Brief for appellants at 30.