State of Nebraska, appellee, v.
Keith M. Huggins, appellant.
___ N.W.2d ___

Filed July 24, 2015.    No. S-14-297.

1. **Limitations of Actions.** If the facts in a case are undisputed, the issue
   as to when the statute of limitations begins to run is a question of law.
2. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls
   for statutory interpretation or presents questions of law, an appellate
   court must reach its conclusion independent of the trial court.
3. **Postconviction: Limitations of Actions: Words and Phrases: Appeal
   and Error.** The issuance of a mandate by a Nebraska appellate court is
   a definitive determination of the "conclusion of a direct appeal," and the
   "date the judgment of conviction became final," for purposes of Neb.
   Rev. Stat. § 29-3001(4)(a) (Cum. Supp. 2014).

Appeal from the District Court for Douglas County: Gregory
M. Schatz, Judge. Affirmed.

Keith M. Huggins, pro se.

Jon Bruning, Attorney General, and Stacy M. Foust for
appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
and Miller-Lerman, JJ.

Miller-Lerman, J.

NATURE OF CASE

Keith M. Huggins appeals the order of the district court for
Douglas County which dismissed his motion for postconvic-
tion relief without an evidentiary hearing on the basis that the
motion was untimely under the 1-year limitation period set

forth in Neb. Rev. Stat. § 29-3001(4) (Cum. Supp. 2014) of the postconviction act. The court determined that the limitation period began to run upon the issuance of the mandate from Huggins' direct appeal in the Nebraska appellate courts and that Huggins did not file his motion within 1 year after such date. Huggins argues that the limitation period did not begin to run until the time for him to file a petition for a writ of certiorari to the U.S. Supreme Court had expired and that therefore his postconviction motion was timely filed. He alternatively argues that the limitation period should have been tolled during a period when he was in federal custody and not in the custody of the State of Nebraska. We reject Huggins' arguments and agree with the court that Huggins' motion was not timely. We therefore affirm the district court's dismissal of the postconviction motion.

## STATEMENT OF FACTS

In 2011, Huggins entered a plea of no contest to second degree murder. He filed two separate motions to withdraw his plea, and the district court denied both motions. The court sentenced Huggins to imprisonment for 40 to 40 years.

The Nebraska Court of Appeals affirmed Huggins' conviction and sentence in a memorandum opinion, *State v. Huggins*, No. A-11-570, 2012 WL 3030780 (Neb. App. July 24, 2012) (selected for posting to court Web site). Huggins petitioned this court for further review, and we denied further review on August 30. Huggins did not file a petition for a writ of certiorari. The Court of Appeals issued the mandate on September 17.

On November 27, 2013, Huggins filed a pro se motion for postconviction relief in which he raised various claims of ineffective assistance of counsel. In the State's response filed January 30, 2014, it requested that Huggins' motion be dismissed without an evidentiary hearing, because the motion was untimely under § 29-3001(4). Section 29-3001(4) of the Nebraska Postconviction Act provides as follows:

A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

The State asserted that Huggins had 1 year from September 17, 2012, the date the Court of Appeals issued its mandate in Huggins' direct appeal, to file a motion for postconviction relief under § 29-3001(4)(a) and that therefore Huggins' motion filed November 27, 2013, was untimely.

On February 10, 2014, the district court dismissed Huggins' postconviction motion without an evidentiary hearing. The court stated that the Court of Appeals' mandate in Huggins' direct appeal was issued on September 17, 2012, and that Huggins' motion for postconviction relief was filed "on November 27, 2013, more than one year following the conclusion of [Huggins'] direct appeal." The court concluded that Huggins' postconviction action was "barred by the time limitation provided for under the Nebraska Postconviction Act" and that therefore the motion "must be dismissed."

On February 14, 2014, Huggins filed a motion to alter or amend the order in which the court dismissed his postconviction motion. Huggins argued that his conviction did not become final until the 90-day period in which he might have petitioned the U.S. Supreme Court for a writ of certiorari had lapsed. He asserted that such time did not lapse until November 28, 2012, and that therefore his motion filed November 27, 2013, was timely.

In his motion to alter or amend, Huggins asserted that at the conclusion of his direct appeal and continuing until May 31, 2013, he was in federal custody serving a federal sentence in Indiana. He also asserted that after he was released from federal custody and put into the custody of the State of Nebraska in May or June 2013, he gained access to legal materials on June 3, when he was transferred to a facility where he was allowed access to a law library. Huggins contends that the running of the limitation period under § 29-3001(4) should have been tolled until June 3, when he had access to the law library, and that therefore his motion filed November 27 was timely.

On March 10, 2014, the district court denied Huggins' motion to alter or amend the February 10 order. The court stated that Huggins had "offered nothing upon which relief might be granted to him for his failure to timely file his motion for postconviction relief."

Huggins appeals the dismissal of his postconviction motion.

## ASSIGNMENTS OF ERROR

Huggins claims, restated, that the district court erred when it dismissed his motion on the basis that it was barred by the time limitation under § 29-3001(4) and when it failed to grant him an evidentiary hearing on the merits of his postconviction claims.

## STANDARDS OF REVIEW

[1,2] If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law. *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810,

716 N.W.2d 87 (2006). To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach its conclusion independent of the trial court. *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122 (2014).

## ANALYSIS

We note as an initial matter that in *State v. Crawford, ante* p. 362, ___ N.W.2d ___ (2015), we concluded that the 1-year period of limitation under § 29-3001(4) is not a jurisdictional requirement and instead is in the nature of an affirmative defense that the State waives if it does not raise the issue in the district court. In contrast to the circumstances in *Crawford*, in the present case, the State raised the period of limitation as an affirmative defense in its answer in the district court, and the court dismissed Huggins' motion on the basis that it was not timely under § 29-3001(4). Therefore, the statute of limitations defense was not waived in this case, and we consider Huggins' arguments that the district court erred when it determined that his motion exceeded the 1-year limit and concluded his motion was not timely.

Huggins makes two alternative arguments in support of his contention that his postconviction motion was timely filed. He first argues that the period of limitation did not begin to run until the time for him to petition the U.S. Supreme Court for a writ of certiorari had expired and that his motion was filed within 1 year from that date. He alternatively argues that the period of limitation was tolled during the time he was in federal prison and that his motion was filed within 1 year after the date he was released from federal custody and put into the custody of the State of Nebraska. We reject both arguments and conclude that Huggins' postconviction motion was untimely.

*Limitation Period Under § 29-3001(4)(a)*
*Began to Run on the Date*
*the Mandate Was Filed.*

Huggins first argues that the 1-year period of limitation under § 29-3001(4)(a) did not begin to run until after the

time during which he might have petitioned the U.S. Supreme Court for a writ of certiorari had expired and that his motion was filed within 1 year after that date. We reject this argument, and we conclude that the period of limitation began to run on the date the mandate was issued by the Nebraska appellate court.

Under § 29-3001(4), the period of limitation begins to run on the latest of certain specified dates, the first of which is "[t]he date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal." § 29-3001(4)(a). Our reading of "conclusion of a direct appeal" in § 29-3001(4)(a) determines the outcome of this case. In the present case, the Court of Appeals decided Huggins' direct appeal in an opinion filed on July 24, 2012. Huggins petitioned this court for further review, which we denied on August 30. Huggins did not file a petition for a writ of certiorari. The Court of Appeals issued its mandate on September 17. The district court in this postconviction action determined that Huggins' conviction became final, and the period of limitation began to run, when the Court of Appeals issued its mandate. We agree.

Huggins argues that his conviction did not become final until the time for him to petition the U.S. Supreme Court for a writ of certiorari had expired. He asserts that under rules of the U.S. Supreme Court, he had until 90 days after we denied his petition for further review to petition the U.S. Supreme Court for a writ of certiorari, and that date was November 28, 2012. Huggins contends that he had 1 year from November 28 to file his postconviction action and that, therefore, his motion filed November 27, 2013, was timely.

Huggins relies on federal case law applying the federal habeas statutes and refers us to a Nebraska case, *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003). We recognize that federal case law indicates that convictions are not final for purposes of the limitation period under the federal habeas statutes until the time expires for filing for certiorari. See, *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 181 L. Ed.

2d 619 (2012) (applying 28 U.S.C. § 2244(d)(1)(A) (2006) with regard to prisoners in state custody); *Clay v. U.S.*, 537 U.S. 522, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003) (applying 28 U.S.C. § 2255 (2000) with regard to defendants in federal custody). But the issue before us is the meaning of the Nebraska Postconviction Act's § 29-3001(4)(a), not a federal statute.

Further, Huggins' reliance on our decision in *Lotter, supra*, is misplaced for several reasons, including the fact that the 1-year period of limitation did not exist at the time, so we were not commenting on § 29-3001(4)(a). The State points out that in other cases where a criminal conviction has been appealed, this court has indicated that the finality of the judgment is tied to the issuance of a final mandate. See, *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009); *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003); *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999); *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999). We reject Huggins' argument, and we conclude that for purposes of § 29-3001(4)(a), the "conclusion of a direct appeal" occurs when a Nebraska appellate court issues the mandate in the direct appeal.

Under Nebraska law and procedure, the issuance of a mandate by an appellate court is a clear signal that a direct appeal has been concluded. Under Neb. Ct. R. App. P. § 2-114(1), a mandate will generally not be issued by a Nebraska appellate court during the time for filing a motion for rehearing (10 days under Neb. Ct. R. App. P. § 2-113 (rev. 2012)) or a petition for further review (30 days under Neb. Ct. R. App. P. § 2-113).

If a criminal defendant intends to seek a writ of certiorari from the U.S. Supreme Court, he or she should request a stay of the Nebraska court's mandate. Neb. Ct. R. App. P. § 2-114(2) provides: "Parties desiring to prosecute proceedings to the United States Supreme Court, and desiring an order staying the mandate, must make application within 7 days from the date of the filing of the opinion or other dispositive entry." It is generally not necessary to wait 90 days to see

whether the defendant will petition for a writ of certiorari, because the defendant should have signaled his or her intent to petition for certiorari by requesting a stay of the mandate pursuant to Neb. Ct. R. App. P. § 2-114(2). Therefore, as a general matter, when a Nebraska appellate court issues a mandate in a direct appeal, it indicates that certiorari is not being sought and that the direct appeal has been concluded. Thus, a mandate is not immediately issued by Nebraska appellate courts after an appeal is decided, and if a defendant intends to seek a writ of certiorari, the defendant may seek to stay issuance of the mandate.

[3] In view of the Nebraska practice rules, jurisprudence, and the language of § 29-3001(4)(a), we conclude that the issuance of a mandate by a Nebraska appellate court is a definitive determination of the "conclusion of a direct appeal," and the "date the judgment of conviction became final," for purposes of § 29-3001(4)(a). In the present case, the "conclusion of [the] direct appeal" occurred when the Court of Appeals issued the mandate in Huggins' direct appeal on September 17, 2012. Huggins filed his postconviction motion on November 27, 2013. Huggins did not file his postconviction motion within 1 year after the date of the mandate, and therefore he did not timely file under § 29-3001(4)(a).

*Huggins Was Released From Federal Custody and Put Into State Custody Within 1 Year After the Limitation Period Began to Run.*

Huggins alternatively argues that the 1-year period of limitation was tolled during the time he was in federal prison and that his postconviction motion, filed within 1 year after the date he was released from federal custody and put into the custody of the State of Nebraska, was timely. We conclude that whether or not such tolling would occur under appropriate circumstances, no tolling occurs where, as in this case, the prisoner has time to file a motion for postconviction relief within the statutory 1-year period.

As determined in the previous section, the 1-year period of limitation for Huggins began to run when the mandate was issued on September 17, 2012. Huggins asserts that at that time, he was in federal custody in a prison in Indiana, and that he was not released from federal custody and put into the custody of the State of Nebraska until May or June 2013 and gained access to Nebraska legal materials on June 3. He contends that the limitation period should have been tolled during the time he was in federal custody and that therefore his motion filed November 27 was timely, having been filed within 1 year after the date he was taken into the custody of the State of Nebraska.

Huggins appears to argue that these circumstances make his motion timely in two ways. First, he argues that under § 29-3001(4)(c), his imprisonment in federal custody was an "impediment" that prevented him from filing a postconviction action in Nebraska. Second, he argues that "equitable tolling" should be applied to toll the running of the limitation period for the time he was in federal custody and did not have access to Nebraska law materials.

With regard to Huggins' first argument, that federal custody and lack of access to a Nebraska law library was an "impediment" under § 29-3001(4)(c) that prevented him from filing a postconviction motion, we note that § 29-3001(4)(c) refers to an impediment "created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state." Regardless of whether being in federal custody without access to Nebraska law materials was an "impediment" under § 29-3001(4)(c), Huggins makes no claim that his imprisonment in federal custody was a situation created in violation of the federal or Nebraska Constitution or Nebraska law, nor is any such violation apparent. Therefore, we reject Huggins' argument that the period of limitation did not begin to run until May or June 2013 under § 29-3001(4)(c).

Huggins also argues that "equitable tolling" should be applied to the running of the 1-year period of limitation for

the time he was in federal custody. This court has not yet addressed whether equitable tolling applies to § 29-3001(4) and under what circumstances it may apply. We note, however, that the U.S. Supreme Court has held that the statute of limitations under 28 U.S.C. § 2244(d), with regard to habeas actions filed by prisoners in state custody, is subject to equitable tolling if the prisoner shows that (1) he or she has been pursuing his or her rights diligently and (2) some extraordinary circumstance stood in the way and prevented timely filing of a petition. *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).

Under § 29-3001(4), the period of limitation generally begins to run under subsection (a) on the date the conviction becomes final. However, the Legislature has determined that certain circumstances justify starting the period of limitation on a later date. These circumstance are set forth in subsections (b) through (e). The statutory language does not provide that the date on which a prisoner is released from federal custody and taken into the custody of the State of Nebraska is an alternate later date from which the period of limitation would begin to run. Therefore, under the statute itself, the limitation period continues to run regardless of whether the prisoner is in federal custody and whether the prisoner is in the custody of the State of Nebraska.

Huggins contends that equitable tolling would be appropriate in this case; he appears to rely in part on precedent of this court in which we held that a prisoner in federal custody is not "'in actual custody in Nebraska'" and therefore not eligible to file an action under the Nebraska Postconviction Act. *State v. Whitmore*, 234 Neb. 557, 558, 452 N.W.2d 31, 32 (1990). Huggins reasons that the period of limitation should not have run against him during the time when he was in federal custody and could not have filed a Nebraska postconviction action. As we determined in *State v. Crawford, ante* p. 362, ___ N.W.2d ___ (2015), the limitation period under § 29-3001(4) is in the nature of a statute of limitations. Therefore, it is at least arguable that the statute of limitations

under § 29-3001(4) may be subject to equitable tolling principles in the same manner that statutes of limitations in other contexts may be subject to equitable tolling. Although this court has acknowledged the possibility of equitable tolling with respect to statutes of limitations in other contexts, see *Becton, Dickinson & Co. v. Nebraska Dept. of Rev.*, 276 Neb. 640, 756 N.W.2d 280 (2008), it does not appear that this court has set forth the specific circumstances under which equitable tolling could occur. More particularly, we have not decided whether equitable tolling may be applied to the period of limitation set forth in § 29-3001(4), and, on the facts of this case, it is not necessary to do so.

In this case, under the statute, the period of limitation for Huggins to file a postconviction motion ran for 1 year from the date the mandate was issued on September 17, 2012. Huggins asserts that he was released from federal custody and taken into the custody of the State of Nebraska in May or June 2013 and gained access to Nebraska legal materials on June 3. At that time, Huggins still had until September 2013, or a period over 3 months, to file a Nebraska postconviction action within the statutory period of limitation.

In *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013), we determined that a defendant was not deprived of the opportunity to file a postconviction action even though the defendant was in federal custody during part of the period of limitation. We stated that "without deciding that a postconviction action cannot be brought during the time a defendant otherwise serving a Nebraska sentence is in federal custody, [the defendant] has neither pled nor proved that she was in federal custody for the entire 1-year period." *Id*. at 946, 830 N.W.2d at 509. As we reasoned in *Gonzalez*, a prisoner is not deprived of the opportunity to bring a postconviction action if there is some time within the period of the 1-year limitation that the prisoner could have filed a postconviction action. In the present action, Huggins does not claim that he was deprived of the opportunity to file his postconviction action during the entire 1-year period of limitation. Under the facts of this case, we

conclude that, whether or not equitable tolling may be used to toll the 1-year limitation period under § 29-3001(4) under proper circumstances, the circumstances of this case would not support equitable tolling for the time Huggins was in federal custody.

We note that this decision does not foreclose consideration of the possibility that there are circumstances under which equitable tolling may apply or that the limitation period may be tolled for a person who was in federal custody during the entire limitation period and arguably had no opportunity to file a postconviction action within the limitation period. However, Huggins alleges only that he was unable to file his motion during part of the period of limitation, and we conclude that such allegation does not support an equitable tolling of the period of limitation under § 29-3001(4). We therefore reject Huggins' argument that the 1-year period of limitation did not run during the time that he was in federal custody.

## CONCLUSION

We conclude that for purposes of § 29-3001(4)(a), Huggins' direct appeal was concluded and his conviction became final when the Court of Appeals issued the mandate on September 17, 2012, and that the 1-year period of limitation began to run on that date. Given the fact that Huggins was in the custody of Nebraska for at least the last 3 months of the 1-year period of limitation, we further conclude that the running of the period of limitation was not tolled for the time Huggins was in federal prison. Therefore, the period of limitation had run before Huggins filed his motion for postconviction relief on November 27, 2013, and we affirm the district court's dismissal of Huggins' motion on the basis that it was untimely filed.

AFFIRMED.

CASSEL, J., not participating.