IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. SITTING HOLY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUEL J. SITTING HOLY, APPELLANT.

Filed January 4, 2022.    No. A-21-337.

Appeal from the District Court for Sheridan County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Juel J. Sitting Holy appeals the order of the district court for Sheridan County which denied his motion for postconviction relief as untimely. We affirm.

### BACKGROUND

Following a jury trial in November 2017, Sitting Holy was found guilty of possession of a firearm by a prohibited person, possession of a stolen firearm, possession of marijuana with intent to deliver or distribute near a school, and possession of a controlled substance. He was sentenced as a habitual criminal to a combined term of not less than 14 years' nor more than 24 years' imprisonment. Sitting Holy timely filed a direct appeal and we summarily affirmed his convictions and sentences. Mandate was issued on July 25, 2018.

- 1 -

Sitting Holy filed a motion for postconviction relief on January 27, 2020. An amended postconviction motion was filed in April in which Sitting Holy alleged his trial counsel was ineffective in various ways, including his failure to file a praecipe for a transcript or a bill of exceptions for his direct appeal. In a motion to dismiss without appointment of counsel or hearing, the State asserted that Sitting Holy's amended motion was untimely. The district court granted the State's motion on all but one claim, finding that Sitting Holy was entitled to an evidentiary hearing on his assertion that trial counsel failed to file the required praecipes on direct appeal. He was appointed counsel for the hearing.

Following an evidentiary hearing, the district court issued an order dismissing the amended motion for postconviction relief as untimely. In making its decision, the district court was presented with the following evidence at the hearing. In a letter dated November 12, 2018, received by the Sheridan County district court clerk on November 20, Sitting Holy requested copies of the docket sheet and all motions filed in his criminal case. The clerk sent the requested documentation on November 27. In an undated letter, received by the district court clerk on December 11, Sitting Holy requested the cost for a certified copy of the bill of exceptions along with discovery. On December 12, the district court clerk responded, notifying Sitting Holy that she did not have any discovery in her possession, the court reporter was responsible for the bill of exceptions, and that the court reporter would let him know the cost of the bill of exceptions. On that same date, the court reporter wrote to Sitting Holy, stating "in regards to your letter concerning a copy of the bill of exceptions in your case, no bill of exceptions was ever requested." She further advised that the cost for the three hearings he requested would be $1,160. On January 2, 2019, Sitting Holy requested in forma pauperis status which was granted on January 7. On February 5, Sitting Holy wrote the district court clerk, and requested that the clerk send him "the transcript from November 7-8, 2017 and also any that I have failed to mention."

The district court found that "In a letter dated December 12, 2018, Sitting Holy was advised that '[n]o bill of exceptions was ever requested.' Sitting Holy's present claim was discovered at that time." Therefore, when Sitting Holy filed his motion for postconviction relief in January 2020, his motion was untimely and outside of the 1-year limitation period set forth in Neb. Rev. Stat. § 29-3001(4) (Reissue 2016). Sitting Holy timely appealed.

ASSIGNMENT OF ERROR

Sitting Holy asserts that the district court erred in dismissing his amended motion for postconviction relief as untimely filed.

STANDARD OF REVIEW

If the facts in a case are undisputed, the issue as to when the statute of limitations begins to run is a question of law. *State v. Huggins*, 291 Neb. 443, 866 N.W.2d 80 (2015). In appeals from postconviction proceedings, the lower court's findings of fact will be upheld unless such findings are clearly erroneous. *State v. Conn*, 300 Neb. 391, 914 N.W.2d 440 (2018).

ANALYSIS

Sitting Holy argues that the district court erred in determining that he had knowledge on December 12, 2018, of trial counsel's failure to request a bill of exceptions because that is the date

of the court reporter's letter, not the date on which he received the information. He asserts that the statute of limitation should not have begun to run until "on or about February 5, 2019," the date on which he responded to the court reporter's letter. Brief for appellant at 11. We disagree with Sitting Holy's proposed date from which he claims the statute of limitation began to run.

The Nebraska Postconviction Act contains a 1-year time limit for filing verified motions. *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018) (citing § 29-3001(4)). Generally speaking, that 1-year period runs from one of four triggering events or from August 27, 2011, whichever is later. *State v. Torres, supra.* Summarized, those triggering events are: (a) the date the judgment of conviction became final, (b) the date the factual predicate of the alleged constitutional claim could have been discovered through due diligence, (c) the date an impediment created by state action was removed, or (d) the date on which a new constitutional claim was recognized by either the Supreme Court of the United States or the Nebraska Supreme Court. *Id.*

The mandate, affirming the judgment, was issued by this court on July 25, 2018, so subsection (a) does not apply. Sitting Holy does not allege that subsections (c) or (d) apply. Therefore, the only possible avenue of relief is subsection (b), the date the factual predicate could have been discovered through due diligence. Sitting Holy argues his motion for postconviction relief was timely filed because the motion was filed within 1 year of his February 5, 2019, letter to the district court clerk, which acknowledged the receipt of the information from the court reporter. We disagree.

The 1-year limitation period shall run from the date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence. § 29-3001(4)(b). The factual predicate for a claim concerns whether the important objective facts could reasonably have been discovered, not when the claimant should have discovered the legal significance of those facts. *State v. Jerke*, 302 Neb. 372, 923 N.W.2d 78 (2019).

The State does not argue that Sitting Holy could have discovered his trial counsel's omission through due diligence; rather, it relies solely upon the correspondence and request for in forma pauperis status to prove that Sitting Holy had actual knowledge of the omission more than 1 year prior to his filing of his postconviction motion. As stated above, however, actual knowledge is not what triggers the limitations period. But because the State and the district court resolved the issue of timeliness based upon the evidence set forth above, and because this evidence refutes Sitting Holy's claim that his filing was timely, we limit our analysis to the same.

Assuming the correspondence among Sitting Holy, the district court clerk's office, and the court reporter is the only avenue through which Sitting Holy could have discovered that trial counsel failed to request the necessary praecipes, we find no clear error in the district court's finding that Sitting Holy's postconviction motion was untimely. Based upon the evidence adduced at the hearing, the court reporter stated in a December 12, 2018, letter that no bill of exceptions was ever requested. Sitting Holy failed to file his postconviction motion until January 20, 2020. In order for the motion to have been timely, Sitting Holy would not have been able to reasonably discover the omission until sometime after January 20, 2019. That would require a 39-day delay in the delivery of the court reporter's December 12, 2018, letter and a disregard of the obvious reason for the in forma pauperis filing.

Prior correspondence between Sitting Holy and the clerk's office refutes such a delay. Specifically, Sitting Holy sent a letter to the clerk's office on November 12, 2018, which was received on November 20. In response, the clerk's office forwarded material to Sitting Holy on November 27. Although we do not have the date on which Sitting Holy received it, we know that he authored an undated letter in response to that material that was received by the clerk's office on December 11. Therefore, within a 14-day period, the clerk's office mailed material to Sitting Holy, he requested additional information as a result thereof, and the clerk's office received that request. Consequently, we find no clear error in the court's determination that Sitting Holy could reasonably have discovered his trial counsel's omission prior to January 20, 2019.

Additionally, the court reporter's letter of December 12, 2018, advised Sitting Holy that the cost to prepare the bill of exceptions was approximately $1,160. On January 2, 2019, Sitting Holy applied for in forma pauperis status. In the undated letter from Sitting Holy to the court reporter he stated that he was granted in forma pauperis status on January 7 "so I would like to have the two hearing transcripts mentioned above, this is now covered by Forma Pauperis." It is reasonable to assume that the request for in forma pauperis status was sought due to the bill of exceptions' preparation cost. Therefore, as of early January, Sitting Holy not only *could* have discovered his trial counsel's omission, but did *in fact* discover it.

The district court concluded that "[i]n a letter dated December 12, 2018, Sitting Holy was advised that '[n]o bill of exceptions was ever requested.' Sitting Holy's present claim was discovered at that time." The parties have interpreted this to mean that the court found the statute of limitations began to run on December 12. While we disagree with using this date to commence the running of the limitations period because it does not allow for receipt of the letter, the question before us is whether Sitting Holy's January 20, 2020, motion was timely. Because we find that the limitations period began to run prior to January 20, 2019, we affirm the district court's order dismissing the postconviction motion.

CONCLUSION

Because Sitting Holy failed to file his postconviction motion within 1 year of the date on which he could have discovered the factual basis for his postconviction claim, we affirm the district court's order dismissing the amended motion as untimely filed.

AFFIRMED.